ALFRED L. HOWE *vs.* ELBRIDGE HOWE & others.

To impeach the validity of a deed, evidence of declarations of the grantor, while of sound mind. prior to the execution of it, as to his intentions concerning the disposal of the granted premises, is admissible, when offered "among other circumstances tending to prove unsoundness of mind, undue influence and fraud;" especially if it is a deed of gift disposing of the grantor's estate among his children and omitting any provision for the issue of a deceased child.

Under the Gen. Sts. *c.* 131, § 14, on trial of the validity of a deed to a married woman, her husband is a competent witness in her behalf, notwithstanding the death of the grantor.

Execution of a deed in presence of an attesting witness is some evidence from which to infer a delivery thereof.

On the issue whether a deed is invalid by reason of the execution thereof while the grantor was of unsound mind or under undue influence, evidence that several months afterwards he remembered executing it, understood what he had done thereby, gave his reasons therefor, and expressed no regret or dissent, is admissible as tending to show sanity and ratification.

On the issue whether the execution of a deed was procured while the grantor was of unsound mind or under undue influence, the burden of proving insanity or undue influence is upon the party alleging it.

Influence properly gained, although used for a selfish purpose and to obtain an unjust advantage, will not avoid a deed thereby procured, unless there is fraud or duress, or unless it is so exerted as to substitute the will of him exerting it for that of the grantor to such a degree that the latter is no longer a free agent.

The refusal of the judge presiding at a trial to make a ruling upon a part only of the evidence, and which assumes that facts are fully established which such part has only a tendency to prove, is no ground of exception.

PETITION for partition of a farm comprising seventy-five acres of land in Marlborough, of one fifth part whereof the petitioner

claimed to be seised in fee simple as tenant in common with the respondents.

At the trial, before *Chapman*, J., it appeared that Stephen Howe, who died March 20, 1865, had four sons and a daughter, viz: Alfred, who was a soldier in the army of the United States, had been missing ever since the second battle of Manassas on August 30, 1862, and left the petitioner as his only child, then less than two years old; and Elbridge, Nahum B., Benjamin S., and Mary L., wife of Abraham Holman, who were the respondents, and all of whom, except Benjamin, contested the plaintiff's claim, and contended that Stephen Howe had divested himself of all title to the land by deeds dated respectively September 1, 1863, and March 29, 1864, in the first of which he granted part of the land to Mary, and in the others all the residue of his real estate to Elbridge, Nahum and Benjamin.

The petitioner contended that these deeds were procured by fraud and undue influence, and that Stephen Howe's mind was not sound when he made them; introduced evidence that, in May and June 1863, said Stephen, being then eighty-three years old, and seised of the land, was sick with a fever; and argued that he was unsound in mind and incapable of transacting business from that time to the time of his death.

In the language of the report of the presiding justice, "among other circumstances tending to prove unsoundness of mind, undue influence and fraud, the petitioner offered evidence of the previous declarations of said Stephen, made before said sickness, that the petitioner was going to have Alfred's share if Alfred did not return; but the court excluded evidence of such declarations made prior to the sickness when it was admitted that his mind was sound."

The judge, against the petitioner's objection, admitted Abraham Holman, the husband of the respondent Mary, to testify as a witness in the respondents' behalf.

The jury found a verdict for the respondents, and the judge reported the case for revision by the full court.

*E. M. Bigelow*, for the petitioner.

*T. H. Sweetser,* (*W. B. Gale* with him,) for the respondents.

WELLS, J.   The declarations of Stephen Howe, that the petitioner would have his father's share of said Stephen's property, made before the sickness which was claimed to have resulted in unsoundness of mind, would not of themselves tend to prove that his subsequent deeds were procured by undue influence and fraud; nor that he was insane at the time of making such deeds; and, if offered alone, would clearly be inadmissible.   The question in this case is, whether they are admissible if offered " among other circumstances tending to prove " such facts.

The objection to the deeds rests upon the proposition that they are not the acts of a free will and sound mind.   Upon such issues, the character and effect of the instruments themselves, and the nature of the transaction, would have an important bearing. If it was in the nature of a final settlement of the estate of Stephen Howe, dividing it among his children, and entirely excluding the son of a deceased child from all participation, that circumstance would be competent for consideration.   It would be stronger or weaker according to the relations that existed between them.   Such evidence is constantly resorted to in cases upon wills; and the proof is the same in kind, whether the issues relate to wills or deeds.   The proposition that the instrument expresses a purpose different from the real purpose of the party when in sound mind involves an inquiry into what that real purpose was.   The presumption, based upon natural impulses, that a man would not disappoint the just expectations of one who has claims of blood, affection, or dependence upon him, without some strong motive or influence operating on his mind or will, may properly be urged against an instrument which disregards such claims.   It may be met by explanations, showing what the real purpose or motive was ; or by proof that the instrument actually accords with the declared purposes of the party.   So also it may undoubtedly be strengthened by proof that it is contrary to the purposes previously declared by him.   The competency of such declarations stands upon the same footing with the presumptions which render the unnatural provisions of the instrument itself proper for consideration in determining such issues.

A foundation must undoubtedly be laid before such declarations can properly be admitted to impeach a deed. But, when the foundation has been laid by evidence tending to show unsoundness of mind, or undue influence and fraud, especially if the deed be one of gift conveying all the property of the grantor, evidence of a previously declared purpose of the grantor, contrary to the disposition thus made, is admissible, in connection with such other evidence, to show that the deed is the result of insanity or imposition, and not the free act and deed of the grantor. In the issue of undue influence and fraud there are two distinct questions: first, Was the improper influence exerted? second, Did it produce its intended effect? Upon the latter question, if there is other evidence to sustain the former, such declarations are certainly admissible and competent.

In this case, the deeds conveyed all the grantor's property to his four children. The petitioner, who is the child of a deceased son, is thus deprived of all share of the estate. The deeds were executed after the grantor, at the age of eighty-three, had been sick with a fever for several weeks, by which the petitioner claimed that his mind had been unsettled. A majority of the court are of opinion that the further statement in the report, that the declarations in question were offered " among other circumstances tending to prove unsoundness of mind, undue influence and fraud," requires the interpretation that such other evidence fairly raised the question whether the deeds did express the free and conscious purpose of the grantor's mind, or the contrary; and that the evidence was rejected as incompetent in its nature, and not admissible in any aspect of the case. It does not appear that the declarations were rejected because a sufficient foundation had not been laid in other respects. We are forced to this construction of the report, because we can see no limit that we are authorized to put upon the extent of the " other circumstances tending to prove," &c.

The husband of one of the respondents was properly admitted to testify. The Gen. Sts. *c.* 131, § 14, expressly remove all objection on the ground of his being husband of one of the parties; and the proviso, where one of the original parties to the

contract or cause of action is dead, excludes only ".the other party."

Upon the first point, however, the objection of the petitioner is sustained and the                    *Verdict set aside.*

A new trial was had at April term 1868, before *Wells*, J., who made a report thereof substantially as follows:

The petitioner proved Stephen Howe's seisin of the land described in the petition; the death of said Stephen on March 20, 1865; his own descent through Stephen's deceased son Alfred; and the survivorship of the three other sons and the daughter of said Stephen; as at the former trial. And it appeared that the wife of said Stephen died on July 14, 1864.

Nahum B. Howe and Elbridge Howe appeared and denied the petitioner's right, and produced in evidence a warranty deed from Stephen Howe to Mrs. Holman, dated and acknowledged September 1, 1863, and recorded September 26, 1863, conveying to her part of the land, minutely described by courses and distances, stakes, and other boundaries; and attested by Stephen Morse, a justice of the peace, who testified that he wrote, witnessed and took the acknowledgment of the deed; that Abraham Holman, the husband of the grantee, came to his house with the grantor, was present while the deed was written and executed, and went away with the grantor; that one of them gave him a memorandum of the courses and distances, from which he wrote the deed; and that the grantor had come alone to see him in relation to making the deed, on a previous day. The consideration named in the deed was love, affection and services rendered. There was no release of dower or homestead, nor any signature of the grantor's wife. The respondents also produced two warranty deeds from Stephen Howe to his three sons, Nahum, Elbridge and Benjamin, dated March 29, acknowledged April 1, and recorded April 28, 1864; one conveying to them the remainder of the land included in the petition; the other conveying to them all the residue of the grantor's real estate, including a lot of land called the Berlin woodlot. To these deeds also there was no signature of the grantor's wife

They further produced a mortgage of the premises described in these deeds, from the grantees therein named to said Stephen, also dated March 29 and acknowledged April 1, but not recorded, purporting to convey to him the premises, with a covenant by them to pay his debts not exceeding $1,000, and to support him and his wife during their lives, and upon condition as follows : " At the death of S. Howe and his present wife, this deed shall be absolutely void.   If default shall be made by said grantors, then this deed shall remain in full force and virtue." They also introduced in evidence a bill of sale from said Stephen to said grantees of all his personal property, also dated March 29.   And they called as a witness Edward L. Bigelow, a justice of the peace, who testified that on April 1 he took said Stephen's acknowledgment of said two deeds, and wrote his name as witness thereto, in the sitting-room of Elbridge Howe's house, where the grantor then was, in the presence of Elbridge and his family ; that in reply to a formal interrogatory whether they were signed by him and were his free acts and deeds, the grantor either nodded, or signified his assent by a word ; that at the same time, at Elbridge's request, the witness signed his name as a witness to the bill of sale ; that Elbridge came to his place of business with a carriage, and conveyed him to the house and brought him back ; that he was in the house only just long enough to do the formal work ; that nothing else was said or done ; and that he left all the papers on a table in the room where said Stephen and Elbridge had been together.

The petitioner contended that at the time of the execution of the three deeds introduced by the respondents, Stephen Howe was of unsound mind ; and also that they were obtained by undue influence and fraud.

Upon the issues of undue influence and fraud there was evidence tending to prove that the two deeds to the three sons, and the bill of sale of personal property, and the alleged mortgage, were written at Elbridge's dictation, by an attorney employed by him, who witnessed, and took his acknowledgment of, the mortgage, but who never saw or communicated with Stephen Howe ; that in May and June, 1863, Stephen Howe was sick

with a fever, during which Mrs. Holman attended on and took care of him; that ever afterwards his body and mind were enfeebled; that after the sickness Mr. Holman had charge of his affairs till Elbridge took charge of them under a power of attorney dated February 24, 1864; that Earl Joslin surveyed the and described in the deed to Mrs. Holman about the time of the date thereof, Mr. Holman at the grantor's request helping to carry the chain, the grantor being at the time in the house; that Joslin made a memorandum of the courses and distances, and gave it to Holman's daughter; that those courses and distances ran so as to greatly injure the rest of the farm; and that on several occasions, and to several persons, the grantor, before his sickness, and down to the time when Elbridge took charge of his affairs, expressed his intention that the petitioner should be remembered in the disposition of his estate, and should have the Berlin woodlot, saying it would be an appropriate gift for the boy. It was also testified by Earl Joslin that during the spring in which Elbridge took charge of the grantor's affairs the grantor told him that it was his intention to give the boy the Berlin woodlot, and told Elbridge so, and Elbridge approved of it; that he and Elbridge went to look at it, and then Elbridge thought it was not best to give it to the boy, but that it should go with the farm. There was evidence that the grantor had great confidence in Elbridge.

The respondents also introduced evidence tending to show that several months after the deeds to the three sons the grantor spoke of them and of his having given them, that he remembered the transaction and understood what he had done, gave reasons therefor, and did not express any regret or dissent. At the respondents' request, the judge instructed the jury that this was competent evidence, tending to show that he understood his act at the time, and also that he ratified it.

John C. Draper, one of the witnesses called by the respondents, testified on cross-examination that the grantor said that they teased him, and especially that Mr. Holman teased him constantly. At the respondents' request, the judge instructed the jury that a deed could not be avoided upon the ground that

the grantor had been annoyed, by teasing, into making it, if he was of sound mind and able to exercise his own free will notwithstanding such influence.

The judge also instructed the jury, at the request of the respondents, that the burden of proving unsoundness of mind of the grantor at the time of the execution of the three deeds was upon the petitioner, and that it was incumbent on him to prove it by a fair preponderance of the evidence.

The petitioner requested the court to give to the jury the following instructions :

" 1. That though the influence may have been that of affection only, and may have been gained by kind offices of duty or affection, or attention to the grantor's bodily infirmities, still if that influence so acquired was abused for a selfish and unjust purpose, or to obtaining an unjust and unfair advantage over others equally entitled to his bounty, such influence was undue influence.

" 2. That the circumstances attending the execution of the Holman deed — the facts that Holman at the time had charge of the grantor's affairs; that he helped to carry the chain ; that he accompanied the grantor to Stephen Morse's house, and remained present while the deed was written and executed, and accompanied him back; that the memorandum of the courses and distances was given to his daughter : and that the grantor's wife did not sign the deed — raise a presumption of fraud and undue influence.

" 3. That the circumstances attending the execution of the deeds to the three sons at Elbridge's house — the facts that the documents were prepared, by Elbridge's dictation, by an attorney employed by him, and who never saw the grantor nor communicated with him ; that they were executed in Elbridge's house in the presence of himself and his family ; that Elbridge brought the justice to his house, who only staid long enough to put the formal questions and receive a nod or a word in reply ; that they were not read over to him; that the grantor's wife did not execute the deeds ; that they embraced all his real estate ; and that there was executed at the same time a bill of sale of all his per-

sonal property; that Elbridge had charge of the grantor's affairs at the time under a power of attorney; and that the transaction was contrary to the grantor's previous declarations of his intention that the petitioner should be remembered in the disposition of his estate and have the Berlin woodlot — raise a presumption of fraud and undue influence.

" 4. That there was no evidence of any delivery of said mortgage.

" 5. That there was no evidence of any ratification of said deeds."

The judge did not give the instructions as prayed for; but did instruct the jury " that in order to avoid the deed it must appear that the influence, however obtained, was abused, or made use of improperly for the purpose of inducing the grantor to execute an instrument which was not in fact his own free act and deed; and that the various facts referred to in the petitioner's prayer for instructions, so far as proved, were for the consideration of the jury, who would give them such weight upon the several issues submitted to them, as in their judgment they were entitled to bear."

A verdict was returned for the respondents; and the petitioner alleged exceptions, which were argued in February 1869.

*E. M. Bigelow,* for the petitioner. 1. There was no evidence that the mortgage was ever delivered. The attesting witness never saw or communicated with the mortgagee. It was never recorded. The mortgagors produced it in court without showing that it had ever departed from their possession. See *Maynard* v. *Maynard,* 10 Mass. 458; *Powers* v. *Russell,* 13 Pick. 69; *Samson* v. *Thornton,* 3 Met. 281; *Younge* v. *Guilbeau,* 3 Wallace, 641; *Parmelee* v. *Simpson,* 5 Wallace, 86.

2. There was no evidence of ratification. The established doctrine is, that no mere parol acknowledgments, which were not intended to influence, and have not influenced, the conduct of any one, and no tacit acquiescence short of the period fixed by the statute of limitations, if uncoupled with acts of estoppel, will ratify the deed of one who at the time of executing it was an infant or of unsound mind. *Hovey* v. *Hobson,* 53 Maine

455, and cases cited. *Boody* v. *McKenney*, 23 Maine, 517, 523, 524. *Cresinger* v. *Welch's lessee*, 15 Ohio, 156, 193. *Tucker* v. *Moreland*, 10 Pet. 75. *Smith* v. *Kelley*, 13 Met. 310. *Dana* v. *Stearns*, 3 Cush. 375. *Gibson* v. *Soper*, 6 Gray, 281. *Proctor* v. *Sears*, 4 Allen, 95. *Lyon* v. *Reed*, 13 M. & W. 285. *Baylis* v. *Dineley*, 3 M. & S. 482. *Doe* v. *Allen*, 3 Taunt. 78. *Perry* v. *Davis*, 3 C. B. (N. S.) 769. *Lewis* v. *Clifton*, 14 C. B. 254. *Lee* v. *Bayes*, 18 C. B. 602.

3. The burden of proof as to soundness of mind is on the party setting up a deed; assent being an essential element of every contract. *Tyrrell* v. *Holt*, 1 Barnard. 12. *Gardner* v. *Gardner*, 12 Allen, 39. *Seaver* v. *Phelps*, 11 Pick. 306. *Hallett* v. *Oakes*, 1 Cush. 298. *Gardner* v. *Gardner*, 5 Cush. 483. It is so as to wills. *Sutton* v. *Sadler*, 3 C. B. (N. S.) 87. *Baxter* v. *Abbott*, 7 Gray, 83. There is nothing in the statute of wills or any of its revisions to indicate that any difference was intended between wills and deeds. The design was " only to provide that every individual who could by his own act lawfully aliene his estate whilst living might devise it at his death." *Osgood* v. *Breed*, 12 Mass. 530.

4. The first prayer for instructions should have been given. Where the mind is weak, the law has regard not so much to the means as to the motives, and to the unjust result. Shep. Touchst. 404, 405. *Tyler* v. *Gardiner*, 35 N. Y. 559. *Delafield* v. *Parish*, 25 N. Y. 1. *Harwood* v. *Baker*, 3 Moore P. C. 282-290. *Stewart* v. *Lispenard*, 26 Wend. 255. *Gardiner* v. *Gardiner*, 34 N. Y. 162.

*T. H. Sweetser*, (*W. B. Gale* with him,) cited, to the point of ratification of the deeds, *Allis* v. *Billings*, 6 Met. 415; *Arnold* v. *Richmond Iron Works*, 1 Gray, 434; to the point of the burden of proof, *Crowninshield* v. *Crowninshield*, 2 Gray, 524; *Loring* v. *Steineman*, 1 Met. 211; *Powers* v. *Russell*, 13 Pick. 76; *Phillips* v. *Ford*, 9 Pick. 39; and as to the second and third prayers for instructions, *Pettingill* v. *Porter*, 8 Allen, 1.

HOAR, J. 1. We are of opinion that there was some evidence of the delivery of the mortgage. Its weight or sufficiency is not open for consideration under this bill of exceptions. Execution

of a deed in the presence of an attesting witness is evidence from which to infer a delivery. *Moore* v. *Hazelton,* 9 Allen, 102, and cases there cited. The authorities on which the petitioner relies are those in which the sufficiency of the evidence to establish the legal delivery of an instrument has been in question. Here the execution of the mortgage was not a necessary fact to be proved in the case. It came in merely incidentally, as one of the circumstances attending the principal transaction ; and, though the evidence was very slight, the court could not be required to rule that there was none.

2. The evidence that the grantor in a deed remembered what he had done, and afterward spoke of it and gave his reasons for it, and did not express any regret or dissent, was properly admitted as tending to prove that he understood his act at the time, and that he ratified it. The deed of an insane person is not void, but voidable. The maker of it, or his legal representative, may avoid it : or, when in possession of his full powers of mind, if he recovers his reason, he may affirm and ratify it. The contract is not a nullity, but, until disaffirmed, is binding ; and the sane party cannot repudiate it. *Allis* v. *Billings,* 6 Met. 415. *Arnold* v. *Richmond Iron Works,* 1 Gray, 434. *Gibson* v. *Soper,* 6 Gray, 279. Any distinct and decisive act of recognition as a valid and subsisting contract is competent evidence of ratification. A new delivery of the deed is not requisite, as it would be if the deed of an insane person were void.

3. The deed of an insane person being not void, but voidable only, it follows that the person who claims or takes title under a deed is not obliged to give any proof of the sanity of his grantor. The conveyance is binding upon the grantee, even if the grantor be insane, until it is avoided by the latter or his representative. In the case at bar, the petitioner claims title as heir to his grandfather. By proving his grandfather's seisin and his own descent, he makes out that title. The respondents introduce a deed from the grandfather, giving a prior title to them, and prove its execution by the grantor. They need prove nothing more. They need not show the sanity of the grantor, because the deed is good until avoided, and to have the right to

avoid it the petitioner must show that the grantor was not of sound mind. The burden of proof was therefore rightly held to be upon the petitioner upon the issue of sanity. The authorities cited by the respondents' counsel will be found to turn upon the form of issues out of chancery, or other pleadings, in which the general rule is stated, of which there can be no doubt, that the party alleging an affirmative fact is bound to prove it. The rule of evidence as to wills depends upon different principles.

4. The instructions given to the jury appear to us to have contained all for which the petitioner asked which could properly or should have been given. The first instruction asked was given in substance, and with only such qualification as the law requires. Influence properly gained, although used for a selfish purpose, and to obtain an unjust and unfair advantage, will not avoid a deed thereby obtained, unless there is fraud or duress, or the influence is exerted by a stronger mind over a weak one, in such a manner and to such a degree as to substitute the will of the person exerting the influence in place of that of him upon whom it is exerted, so that the latter is no longer a free agent.

The facts set forth in the second and third prayers for instructions were submitted to the jury as evidence of fraud and undue influence. There is no legal presumption arising from them, but only a presumption of fact, of which the petitioner had the benefit, so far as the facts were established to the satisfaction of the jury. The court were not required to assume them to be proved · nor to give a hypothetical ruling upon them separately from the other evidence in the case.

*Exceptions overruled.*