## MARY E. WRIGHT *vs.* GILMAN F. WRIGHT.

Middlesex. Jan. 20. — March 25, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

On the issue whether a person was insane at the time of making a contract, evidence of his mental condition eight months after wards was excluded. *Held*, that the party offering the evidence had no ground of exception.

On the issue whether a person is insane on a certain day, if the plaintiff puts in evidence that such person was insane at an earlier time, and that the insanity was not of a temporary character, the burden of proof is not on the defendant to show that he was sane on the day in question.

On the issue whether a person was insane on a certain day, the judge presiding at the trial is not bound to instruct the jury that, "in the absence of frenzy or raving madness, delusion is the true and legal test of insanity. An insane delusion consists in the belief of things as real which do not in fact exist, or which a rational person would not believe."

The fact that a judge in his instructions to a jury states that certain evidence was offered, but was not admitted, and must not be regarded, when in fact the evidence was admitted, does not afford ground of exception, unless the attention of the judge is called to the misstatement.

CONTRACT by an insane person, by her guardian, to recover the proceeds of a promissory note and a mortgage, indorsed and assigned by her on December 15, 1881, when she was alleged to be insane.

Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions, in substance as follows:

It was admitted or proved that, before the date of the writ in this action, the defendant had been paid the principal and interest of the note by the maker, and that due demand had been made on him therefor.

The plaintiff introduced a number of witnesses, who testified as to the appearance, conversation, and acts of the plaintiff at various times between January 1, 1880, and the time of the assignment of the note and mortgage to the defendant, and also covering a period of five months subsequent thereto, tending to show that she was subject to hallucinations and delusions, and various other symptoms of insanity, not however amounting to frenzy or raving madness.

The plaintiff put in evidence the warrant of commitment of the plaintiff to the Worcester Lunatic Hospital, dated May 15, 1882, signed by the standing justice of a district court, which

recited, among other things, " that said Mary E. Wright is an insane person, and a proper subject for treatment and custody in said institution."

The plaintiff also put in evidence the appointment of the guardian, dated July 16, 1882, and the records of the Probate Court, finding the plaintiff to be an insane person on that day.

The defendant called a number of witnesses, who testified that they knew the plaintiff; that they had seen her at different times during a few months before and after December 15, 1881, up to May 15, 1882 ; that they noticed nothing singular or unusual in her conversation, appearance, acts, or dress, nor any incoherence in her remarks, nor anything in her conduct to attract their attention.

The defendant also introduced evidence tending to show that the plaintiff, on March 21, 1882, conveyed by deed the equity of redemption in the real estate which he had conveyed to her in consideration of the assignment of said note and mortgage, and in said deed stated that the premises were the same conveyed to her by Gilman F. Wright by deed dated December 15, 1881, for the purpose of showing that she then ratified and confirmed said assignment, if at that time she had a lucid interval and fully understood the nature of the transaction.

Mrs. Stanchfield, a witness called by the defendant, testified that she had known the plaintiff about eight years; that she saw her frequently during 1880, 1881, and the early part of 1882, down to the time she was committed to the insane asylum, on May 15, 1882; that before the commitment she did not observe any peculiarity in her dress, conversation, actions, or manner. On cross-examination, she testified that she saw the plaintiff in August, 1882, about three weeks after her return from the asylum. The witness was then asked, " Whether, when you saw her in August, 1882, after she came from the asylum, you noticed any peculiarities in her looks, manner, conversation, or actions." To this question the defendant objected, and the judge excluded it.

W. H. Anderson, a witness for the defendant, testified that he first saw the plaintiff in October, 1881, when she came to his office for counsel with reference to foreclosure of the mortgage ; that he brought suit for her on this mortgage note against the

mortgagor; that he saw her frequently in October and November, 1881, and that she was in his office on December 15, 1881, with the defendant, and acknowledged the assignment; that he observed no peculiarity in her appearance or actions, nor any incoherence in her conversation.   On cross-examination, he testified, that he represented her in a hearing had in the Probate Court in February, 1883, on her petition for the removal of her guardian, filed in November, 1882; that the present defendant agreed to pay him for his services therein, and he had brought suit against him to recover the same.   The witness was then asked: " Did you notice anything unusual or peculiar in respect to her mental condition from October 1, 1882, up to February 1, 1883, the time of the conclusion of the hearing on her petition to the Probate Court? "   The defendant objected to this question, the judge excluded it, and the plaintiff excepted. The witness was then asked: " What was her appearance in October, 1882?   What was her appearance in October, 1882, as compared with her appearance in December, 1881? "   The defendant objected to these questions, the judge excluded them, and the plaintiff excepted.

The plaintiff requested the judge, to instruct the jury as follows : " 1. If the plaintiff satisfies the jury, by a fair preponderance of evidence, that Mary E. Wright was insane prior to the assignment of the note and mortgage in question to the defendant, and that such insanity was not merely temporary, and caused by and confined to a violent disease, you will find for the plaintiff, unless the defendant shall prove, by a preponderance of evidence, that the trade by which the note and mortgage was assigned to the defendant was made during a lucid interval, or that during a subsequent lucid interval she ratified and confirmed it.   2. The lucid interval during which an insane person may make a valid and binding contract must not be a mere superficial tranquillity; it must be a remission of the malady, a kind of temporary cure, so marked as to be similar to restoration to health, and the lucid interval must be established by evidence equally strong and conclusive as would be required to establish the fact of mental derangement.   3. If the jury find from the evidence that Mary E. Wright was insane at the time she made the contract with the defendant, by which the note and

mortgage mentioned in the plaintiff's declaration passed to the defendant, the plaintiff is entitled to recover, without showing that the consideration paid for said mortgage and note has been returned or offered to the defendant, unless you find that the contract mentioned was subsequently ratified by Mary E. Wright during a lucid interval. 4. In the absence of frenzy or raving madness, delusion is the true and legal test of insanity. An insane delusion consists in the belief of things as real which do not in fact exist, or which a rational person would not believe. 5. Insanity once shown, unless it is wholly confined to and caused by some violent disease from which the insanity emanated, is presumed to continue until the contrary is shown. If a person who is insane when suffering from violent disease is also shown to be insane before the disease and after it has subsided, the insanity of such person during the continuance of such disease cannot be attributed to the disease, unless it be expressly shown to have been wholly caused thereby."

The judge refused to give these instructions, and instructed the jury as follows :

" The burden of proof is upon the plaintiff to show, by a fair preponderance of the evidence, that at the time of the contract, December 15, 1881, Mrs. Wright was of unsound mind, and incapable of understanding and deciding upon the terms of the contract. On this question, whether her mind was sound or unsound, whether she was sane or insane, the presumption of law is in favor of her sanity. The rule of evidence applicable to this case is, that if insanity is proved at a time previous to the contract, at a period not too far back, the insanity is presumed to continue, unless there is evidence to control that presumption ; but this rule does not apply if it appears that the previous insanity proved was caused by a violent disease. In this case, evidence has been introduced by the plaintiff to show unsoundness of mind, or insanity, at a time previous to the contract, and the plaintiff's theory is, that this unsoundness continued to the time of the contract, and that you ought to believe that it did, notwithstanding the evidence introduced by the defendant, tending to show that the insanity was caused by sickness, and ended upon her restoration to health. But the theory of the defendant is, that insanity is not proved at any time, and that if the

jury should be satisfied that it is, yet that no insanity is proved except as the effect of disease, and ending with the disease ; and further, that if previous insanity is proved by the plaintiff's evidence, yet that you ought to be satisfied by the defendant's evidence, and by a fair proponderance of the whole evidence in the case, that such previous insanity had passed away, and that at the time of the contract she was sound of mind and sane, and capable as a rational person to understand the terms of the contract and to decide upon them. The plaintiff offered evidence of a proceeding by which Mrs. Wright was sent under our statutes to a state lunatic hospital, but that evidence was not admitted, and is not to be considered by the jury. Evidence has been admitted tending to show that, upon the application for the appointment of a guardian, she was adjudged to be insane, and this judgment is in the case, having the effect of *prima facie* evidence.

"If the jury are satisfied, by a preponderance of the evidence, that at the time of the contract Mrs. Wright was insane, then she has a right to avoid the obligation incurred by her in the contract, and to recover the value of the note and mortgage, which in this case is the sum which was received for them by the defendant, with interest at six per cent from the time he received it to this time ; and she may so recover, although no offer has been made to put the defendant in possession of the property which he gave in exchange for the note and mortgage.

"If Mary E. Wright subsequently conveyed the real estate which was conveyed to her by the defendant, and at the time of such subsequent conveyance she was of sound mind and knew the business in which she was engaged, the jury may take the fact of such conveyance into consideration, as bearing upon the question whether or not it was a ratification of the contract of December 15.

"If the jury find that Mrs. Wright was sane, and capable of making the contract at the time of the contract, the defendant is entitled to a verdict."

Before the jury retired, the plaintiff excepted to the foregoing instructions by the court, but did not point out any particular instruction to which he excepted.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*J. N. Marshall & F. W. Qua*, for the plaintiff.

*G. F. Richardson*, (*D. S. Richardson* with him,) for the defendant.

HOLMES, J. 1. We cannot say that the judge who tried the cause exercised the discretion confided to him erroneously, in excluding evidence of the mental condition of the plaintiff eight months and more after the assignment, and after she had been confined in a lunatic hospital. *Commonwealth* v. *Pomeroy*, 117 Mass. 143, 148. *White* v. *Graves*, 107 Mass. 325, 327.

2. The plaintiff's first request for a ruling was misleading in form, and might well have been understood to mean that the plaintiff could get rid of the burden of proving insanity at the moment of the assignment, by proving it at some earlier time. This, of course, is not so. The plaintiff might have made out a *prima facie* case in that way, but the burden of proof was on him, and did not shift. *Howe* v. *Howe*, 99 Mass. 88, 98. *Powers* v. *Russell*, 13 Pick. 69, 76. *Crowninshield* v. *Crowninshield*, 2 Gray, 524, 534. See *Staples* v. *Wellington*, 58 Maine, 453, 460. The jury were instructed that, if insanity not due to a violent disease was proved at a time previous to the contract, at a period not too far back, the insanity was presumed to continue, unless there was evidence to control that presumption. This was all that the plaintiff had a right to ask.

3. The second request was open to the same objection as the first, and further undertook to define a lucid interval in a way which the judge was not called upon to follow. His statement of the defendant's contention plainly imported that, if the plaintiff had proved previous insanity, then, in order to find for the defendant, the jury must find that at the time of the contract the intestate was of sound mind, and able rationally to understand and decide upon the terms of the contract. See *Allis* v. *Billings*, 6 Met. 415, 421.

4. The fourth request is more or less sanctioned by some cases in which a judge, whose duty it was to decide both facts and law, has laid down delusion as the test of insanity upon which he should act. But it deals with a question which is mainly one of fact, and one upon which courts have been increasingly

unwilling to lay down sweeping rules. Whether Mrs. Wright was competent to make the assignment was a question of degree, to be determined by the jury on all the facts and circumstances of the case. The court followed the usual practice, in leaving it to the jury, in general terms, whether Mrs. Wright was of unsound mind, and incapable of understanding and deciding upon the terms of the contract. See *Townsend* v. *Pepperell*, 99 Mass. 40, 46; *Whitney* v. *Twombly*, 136 Mass. 145, 147; *Staples* v. *Wellington*, 58 Maine, 459; *Dennett* v. *Dennett*, 44 N. H. 531, 538; *Gardiner* v. *Gardiner*, 34 N. Y. 155; *Smee* v. *Smee*, 5 P. D. 84; *Boughton* v. *Knight*, L. R. 3 P. & D. 64; *Banks* v. *Goodfellow*, L. R. 5 Q. B. 549; *Smith* v. *Tebbitt*, L. R. 1 P. & D. 398.

5. The third and fifth requests were given in substance.

6. The statement in the charge, that evidence was not admitted of the proceeding by which Mrs. Wright was sent to a state lunatic hospital, and that it was not to be considered, was not called to the attention of the judge, and the error is not open upon a general exception to the instructions set forth. *McMahon* v. *O'Connor*, 137 Mass. 216.

*Exceptions overruled.*