## ULRIKA J. HERMANSON *vs.* SAMUEL SEPPALA.

Essex.   February 5, 12, 1930. — July 2, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Equity Pleading and Practice*, Appeal.   *Deed*, Validity, Ratification. *Election. Equity Jurisdiction*, To avoid deed of insane person.   *Insane Person. Evidence*, Presumptions and burden of proof.

A paper, filed by the defendant in a suit in equity after a final decree giving the plaintiff relief, in which he states that he "appeals to the Supreme Judicial Court for the Commonwealth from the final decree," is sufficient as an appeal although he does not therein state that he "was aggrieved by the decree, ruling, opinion or judgment therein made or entered."

While a deed of an insane person conveying real estate is voidable, and not *ipso facto* void, the bringing of a bill in equity to set it aside is an election to disaffirm and avoid it.

In a suit in equity by a woman to have a deed of real estate worth $6,000, made by her when insane in August, 1919, declared void, the defendant contended that the plaintiff, after the making of the deed, became sane and ratified it, and the master found the following facts on that issue: In October, 1918, she "had an attack of influenza, then generally prevalent," and "was confined to her bed not more than a week." Her "illness left her in a state of mental depression, and with her strength and general health impaired. Although in a short time she regained sufficient strength to enable her to do her daily tasks about her home, she was for a long period thereafter depressed, morose and seclusive and at times in an absent-minded condition, and frequently complained of pains in her head." After the conveyance her "physical and mental condition . . . slowly improved." In November, 1923, the defendant had given the plaintiff notice to vacate a room which she still occupied on the premises under an oral agreement which had given rise to the conveyance, and which had included an agreement by the defendant to reconvey to her. The master was "unable to determine upon the evidence the date of her recovery." He found, however, that "several months later" than November, 1923, her mental condition had "so much improved that she was able to comprehend the nature and effect of her deed to the defendant"; that she then offered the defendant an amount of cash for a reconveyance which was beyond her legal obligations if she had intended to disaffirm; but that the defendant refused the offer and "stated that he was unwilling to make any reconveyance to her and soon after again gave her notice to vacate." The plaintiff brought the suit in May, 1924. *Held*, that

(1) It was to be presumed that the insanity of the plaintiff, from which she suffered when she executed the deed to the defendant, continued until a time "several months later than" November, 1923; the facts found by the master did not bring the case within the exceptions to the rule to the effect that such presumption does not arise when the insanity is shown to be the result of a "violent disease" or "accidental or temporary in its nature," nor did they control the presumption;

(2) Nothing in the conduct of the plaintiff after the time "several months later" than November, 1923, when she had become "able to comprehend the nature and effect of her deed," amounted to ratification of it;

(3) The plaintiff's offer to the defendant, unaccepted, though it went beyond her legal obligation if she intended to disaffirm, was not decisive of an election to affirm;

(4) In the circumstances the lapse of time before bringing suit for cancellation did not preclude the plaintiff from disaffirming the conveyance;

(5) A decree for the plaintiff was warranted.

BILL IN EQUITY, filed in the Superior Court on May 1, 1924, and afterwards amended, described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *F. T. Hammond,* J., there were entered an interlocutory decree confirming the master's report, and a final decree as described in the opinion. The defendant appealed.

Before this court, the defendant contended only that the plaintiff was competent to, and had ratified her deed to the defendant, and had waived her right to avoid it.

*G. P. Davis,* (*W. E. Hays* with him,) for the defendant.

*J. G. Annala,* for the plaintiff.

FIELD, J. This is a suit in equity brought in the Superior Court for the cancellation of a deed, dated August 16, 1919, purporting to have been executed by the plaintiff, and to convey certain real estate in Gloucester to the defendant, and for other relief. This bill of complaint was a substitute for the bill (filed May 1, 1924, and later amended,) considered on demurrer in *Hermanson* v. *Seppala,* 255 Mass. 607. The case was referred to a master who made a report to which objections were filed. The objections, which by force of Equity Rule 26 (1926) became exceptions, were overruled, and the report was confirmed by an interlocutory decree. Thereafter a final decree was entered, whereby it was

adjudged that the plaintiff, when she executed the deed, "was not of sound mind and did not have sufficient mental capacity to understand the nature or effect of her act and . . . is entitled to avoid said deed," and that "said deed is null and void and the defendant took no title thereunder"; and it was ordered that "the defendant forthwith deliver up said deed to the plaintiff for cancellation" and "be perpetually enjoined from interfering in any manner with the plaintiff or with any person or persons claiming under her in the exercise of her or their right, title or interest in said premises or in the free use and enjoyment thereof," and that the defendant pay the costs of suit. The defendant appealed from the final decree only.

The plaintiff filed a motion in this court to dismiss the defendant's appeal "for the reasons that the appeal does not claim that the defendant was aggrieved by the decree, ruling, opinion or judgment therein made or entered." The appeal recites that the defendant "appeals to the Supreme Judicial Court for the Commonwealth from the final decree." This is sufficient. Obviously such an appeal implies a claim that the appellant is a "party aggrieved" by the decree appealed from. G. L. c. 214, § 19, amended by St. 1929, c. 265, § 5.

No appeal was taken from the interlocutory decree overruling the exceptions and confirming the report, and it is not contended by the defendant that the final decree was erroneously affected thereby so as to require revision under G. L. c. 214, § 27. See *Centebar* v. *Selectmen of Watertown*, 268 Mass. 121, and cases cited. The question is, therefore, "whether the final decree was within the scope of the bill and supported by the facts found." *Ledoux* v. *Lariviere*, 261 Mass. 242, 244 and cases cited.

The master found, among others, the following facts: In August, 1919, the plaintiff entered into an oral arrangement or agreement with the defendant "whereby the former was to convey to the latter all her land and the two tenement houses and the eight out-buildings thereon," being the premises in question, "and all the personal property upon the premises except her household furniture and her two

cows, upon the following terms and conditions: The plaintiff was to reserve and collect for her own use, the rents from tenants up to October 1, 1919, and to assume and pay the taxes on the property, real and personal, for the year 1919, which amounted to $78, and the defendant was (a) to assume and pay the outstanding mortgages (aggregating $1,850) on the real estate held by the Granite Savings Bank of Rockport, (b) to pay to the plaintiff the sum of $150, by permitting her to use and occupy, for a period of fifty months at the rental of $3 per month, the tenement then occupied by her in the westerly house, consisting of three attic rooms and one room on the second floor, and (c) to give to the plaintiff an agreement in writing to reconvey the property to her whenever she requested, the terms of the reconveyance not being expressly stated." On August 16, 1919, the plaintiff executed a deed of the premises to the defendant. No "agreement to reconvey was made or tendered by the defendant, and no mention of such an agreement was made" when the deed was executed. The "fair market value of the property conveyed to the defendant at the time of the conveyance was $6,000 at least." "Immediately after receiving the deed, the defendant took possession of the property. . . . The plaintiff continued to occupy the same small tenement she had previously occupied, receiving from the defendant each month, a receipt or voucher . . . for $3, on account of the rent. . . ." After October 1, 1919, "the defendant collected all the rents from the other tenants of the premises." He made repairs and improvements. By some time in November, 1923, the period of fifty months having expired, the defendant had requested the plaintiff to vacate the premises.

The master found specifically that "the plaintiff when she made the conveyance in question was not of sound mind and did not understand nor have the mental capacity to understand the nature or effect of her act." This finding must stand. The evidence is not reported and the finding is not inconsistent with other findings or plainly wrong. See *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. The deed of an insane person conveying land is voidable.

*Allis* v. *Billings*, 6 Met. 415.   *Brewster* v. *Weston*, 235 Mass. 14, 16.   It "is, ineffectual to convey a title to land, good against the grantor, or against his heirs and devisees, unless it is confirmed by the grantor himself when of sound mind, or by his legally constituted guardian, or by his heirs or devisees. . . . And such deed may be disaffirmed without returning the consideration money, or placing the other party *in statu quo*" (*Brigham* v. *Fayerweather*, 144 Mass. 48, 51), if, in the meantime, the privilege to disaffirm has not been terminated by ratification. *Allis* v. *Billings*, 6 Met. 415, 421.   *Gibson* v. *Soper*, 6 Gray, 279.   "A bill in equity may be maintained to set aside a conveyance from an insane person."   *Hermanson* v. *Seppala*, 255 Mass. 607, 610.   The bringing of such a bill is an election to "disaffirm" or "avoid" the conveyance. It follows that the decree was right unless the plaintiff, when of sound mind, had ratified the deed in question.

On the facts found by the master the plaintiff did not ratify the deed.   As she was of unsound mind on August 16, 1919, when the deed was executed, her "insanity was presumed to continue, unless there was evidence to control that presumption," (*Wright* v. *Wright*, 139 Mass. 177, 182, see also *Little* v. *Little*, 13 Gray, 264, 266), though the presumption of continuing insanity does not arise when the insanity is shown to be the result of a "violent disease" (*Hix* v. *Whittemore*, 4 Met. 545, 546, 547, *Wright* v. *Wright*, *supra*), or "accidental or temporary in its nature." *Little* v. *Little*, *supra*.   The facts found do not bring this case within the exception to the general rule, nor do they control the presumption.   These facts were, in substance, as follows: In October, 1918, she "had an attack of influenza, then generally prevalent," and "was confined to her bed not more than a week."   Her "illness left her in a state of mental depression, and with her strength and general health impaired.   Although in a short time she regained sufficient strength to enable her to do her daily tasks about her home, she was for a long period thereafter depressed, morose and seclusive and at times in an absent-minded condition, and frequently complained of pains

in her head." After the conveyance her "physical and mental condition . . . slowly improved." The master was "unable to determine upon the evidence the date of her recovery." He found, however, that "several months later" than November, 1923, her mental condition had "so much improved that she was able to comprehend the nature and effect of her deed to the defendant." The plaintiff, therefore, was not capable of ratifying the deed until a time several months after November, 1923. Consequently, it need not be determined whether her acts prior thereto would have amounted to ratification if she had been of sound mind.

Nothing in the conduct of the plaintiff after the time "several months later" than November, 1923, when she had become "able to comprehend the nature and effect of her deed," amounted to ratification of it, though acts "inconsistent with any just purpose to disaffirm the conveyance" would have had that result. *Arnold* v. *Richmond Iron Works*, 1 Gray, 434, 439–440. The master found that she then "offered to pay the defendant $2,100 for a reconveyance of the real estate to her, — $250 in addition to the amount ($1,850) of the mortgages still held by the Granite Savings Bank," that this offer was refused by the defendant who "stated that he was unwilling to make any reconveyance to her and soon after again gave her notice to vacate," and that "at the time of this refusal to reconvey, the fair rental value of the real estate, other than the tenement occupied by the plaintiff, during the period of the defendant's possession had exceeded the amount of the interest, taxes, water rates and insurance premiums which had been paid by him, and the actual costs of all repairs and improvements which he made upon the property." This offer of the plaintiff was at most equivocal. It did not necessarily imply recognition of the validity of the deed. Nor was it necessarily referable to the oral agreement to reconvey. It was consistent with an intention on the part of the plaintiff to disaffirm, and to obtain a restoration of the *status quo* by securing for herself possession of the premises and removing the cloud

cast by the deed upon her title thereto, without litigation, and by restoring to the defendant the consideration paid by him and making adjustments for his expenditures upon the premises. This is a more reasonable explanation of the offer than that the plaintiff was seeking to buy for $2,100 property which had a fair market value of more than $6,000. Her offer unaccepted, though it went beyond her legal obligation if she intended to disaffirm (*Brigham v. Fayerweather, supra*), was not decisive of an election to affirm. It did not go so far as the acts held to constitute such elections in *Butler v. Hildreth*, 5 Met. 49 and *Arnold v. Richmond Iron Works, supra*. Nor under the circumstances of the case did the lapse of time before bringing suit for cancellation preclude the plaintiff from disaffirming the conveyance.

*Motion to dismiss denied.*
*Decree affirmed with costs.*