25a 405
26a 532
27a 93

## No. 5802.

### JOHN CORDWAY *v.* THE STATE.

1. PRACTICE—CONTINUANCE—DILIGENCE—NEW TRIAL.—A continuance is properly refused if the application therefor shows a want of diligence to secure the absent testimony. But see the opinion on rehearing to the effect that, notwithstanding inadequate diligence to secure the testimony in the first instance, a new trial should be granted when, as in this case, the absent testimony, in the light of the evidence on the trial, becomes material to the defense and is probably true.

2. PERJURY—EVIDENCE.—The perjury assigned against the accused was au alleged false statement made by him as a witness for the defense on the trial of one C. for the murder of one J. The State was permitted to introduce in evidence the statements of the accused as a witness at the inquest upon the body of the said J., and also his subsequent statement to one H. with respect to the killing of J. by C. *Held*, that the evidence was competent as bearing directly upon the falsity of the statements upon which the perjury was assigned.

3. SAME.—The State having proved that, on the day after the killing of J. by C., the accused told one H. that J. was unarmed when he was killed by C., the defense proposed, but was not allowed to prove, that two or three days subsequent to the homicide he told one McM. that J. had a pistol in his hand when he was shot and killed by C. *Held*, that exclusion of the proposed evidence was correct.

4. PRACTICE—EXCEPTIONS—CHARGE OF THE COURT.—A general exception to the charge of the court, which fails to point out specifically the errors complained of, will not be considered by this court on appeal.

5. SAME—PRIVILEGE OF COUNSEL.—See the statement of the case for remarks used by the prosecuting counsel in his closing address to the jury, *held* not to constitute an abuse of the privilege of counsel in argument, inasmuch as they were called forth and authorized by the argument for the accused.

6. SAME — JURISDICTION OF THE DISTRICT COURT — CASE STATED.— The perjury assigned in this case was alleged to have been committed on the trial of one Coy for the murder of one Jackson in Wilson county. Soon after the killing of Jackson, Coy killed one Elder, in Karnes county, and fled to Mexico, whence he was extradited for the murder of Elder, but not for the murder of Jackson. Coy was then indicted and put upon trial in Wilson county for the murder of Jackson, which trial resulted in a mistrial. No objection nor plea to the jurisdiction of the district court of Wilson county was interposed upon the trial for the murder of Jackson, but, soon after the mistrial. Coy sought his discharge by the writ of habeas corpus upon the ground that, not having been extradited for the murder of Jackson, he was illegally restrained of his liberty upon the charge of the murder of Jackson. Upon the hearing of the writ it

was adjudged that the district court of Wilson county had no jurisdiction to try him for the Jackson murder, and he was discharged from restraint under that charge. The contention in this case is that the district court of Wilson county, having no jurisdiction to try Coy for the murder of Jackson, the accused did not, and could not, commit legal perjury on that trial. *Held:* 1. The district court of Wilson county had jurisdiction of the subject matter of the prosecution—murder—against Coy. 2. It did not have jurisdiction over Coy's person to try him for the murder of Jackson, because he was not extradited for that particular murder. 3. Jurisdiction over the person is a matter subject to the objection or waiver only of the person over whom it is being or is sought to be exercised. 4. If such person submits to the jurisdiction of the court over his person, and to trial, without objection, he waives his privilege, whatever it may be, and the proceedings of the court trying him, at the most, are merely voidable, and voidable only at his instance, and can not be questioned by any other person. 5. The trial of Coy for the murder of Jackson was a legal proceeding, and the court trying him was a court of competent jurisdiction for the purposes of this case. Wherefore the contention of the defense is not tenable.

7. PERJURY—FACT CASE.—The credibility of witnesses must be determined by the jury alone, who are likewise charged with the duty of solving conflicts of testimony. See the statement of the case for evidence which, though conflicting, is ample to support the finding of the jury. But note that, on rehearing, a new trial is awarded in view of the evidence on the trial, and of the materiality and probable truth of absent testimony on account of which a continuance was asked and refused.

APPEAL from the District Court of Wilson. Tried below before the Hon. George McCormick.

The perjury alleged in this case was that on the trial of Juan Coy, in the district court of Wilson county, Texas, for the murder of James Jackson, the appellant, as a witness in behalf of the said Juan Coy, falsely testified that he was present when the said Coy shot and killed the said Jackson, and that, when the said Coy fired the fatal shot, the said Jackson had a pistol in his hands. The penalty assessed by the verdict was a term of five years in the penitentiary.

The State first introduced in evidence the indictment against Juan Coy, charging him with the murder of James Jackson in Wilson county, Texas, on the twenty-seventh day of June, 1886, and the judgment of the court showing the discharge, because of disagreement, of the jury which tried the said indictment. John E. McMullen was then sworn for the State, and testified that he was the district clerk of Wilson county, Texas, in December, 1886, when Juan Coy was tried in that county for the

murder of James Jackson. As such clerk he administered the legal oath to the defendant as a witness for said Coy on that trial.

R. B. Jones testified, for the State, that he was a member of the jury which, at the December term, 1886, of the district court of Wilson county, Texas, tried Juan Coy for the murder of James Jackson. He remembered distinctly that the defendant in this case was sworn and testified on that trial as a witness for Coy. He testified that he, Cordway, was present when Coy killed Jackson, and that Jackson, when shot by Coy, had a pistol in his hand.

W. O. Murray testified, for the State, that he was a member of the jury which tried Coy for the murder of Jackson. This defendant appeared as a witness for Coy on that trial, and testified substantially as follows: "I was present when Juan Coy killed James Jackson, and saw the struggle that took place between them. Coy had one of his arms thrown around the neck of James Jackson, and James Jackson had one of his arms thrown over Coy's shoulder, and James Jackson had a pistol in his other hand at the time that he was killed."

The State next read in evidence the testimony of the defendant at the inquest upon the body of James Jackson, as reduced to writing when delivered. It reads as follows: "John Cordway sworn, says: 'I do not know how the dispute came up. I came up just after it begun. I think Monroe Toodles and Tomas Lopez were the ones who were disputing. Then Coy spoke in favor of Lopez. The deceased then spoke up and asked him if he took it up. He said he did. Deceased then remarked: 'If you do, I will fix you; I have a gun for you,' and started towards it. Coy then went after him, and as he went he pulled out his pistol, and caught deceased. I saw his pistol in his hand, and went up and caught hold of it. Just as I caught the pistol it fired and killed deceased.'"

A. R. Stevenson testified, for the State, that he was the county attorney of Wilson county at the time of the inquest over the body of James Jackson, and conducted the examination of the witnesses, at that inquest, on behalf of the State. After Cordway had testified on that inquest as set out above, and after he had signed his said testimony, and had started to leave the room in which the inquest was being held, the witness asked him, Cordway, if Jackson was armed at the time he was shot and killed. Cordway replied that Jackson was not armed at that time. This latter part of the testimony of Cordway was not

written down. The said inquest was held on the day after the killing of Jackson. H. B. Gouger, constable of the precinct, testified that he was present at the inquest upon the body of Jackson, and heard Cordway tell Stevenson that Jackson was unarmed when Coy shot and killed him.

Monroe Toodles was the next witness for the State. He testified that he was present on the race track at the time that Jackson was killed by Coy, and saw all that occurred at that time. He went to the track to attend the race with Jackson. A dispute about the result of a race, and the disposition of certain moneys bet on it, arose between Tomas Lopez and somebody else. Coy hearing the dispute, interposed in favor of Lopez, when Jackson asked him if he proposed to take up the quarrel. Coy replied that he did, when Jackson, remarking, "I will go and get my gun and fix you," started off towards a point fifty or sixty steps distant, where he had left his gun. Coy followed and caught Jackson around the neck and shot him. Witness, who was within four steps of the parties when the fatal shot was fired, saw the pistol in Coy's hand, and saw that Jackson not only had no pistol in his hand, but had none about his person. After shooting Jackson, Coy fled. Witness ran at once to Jackson's gun, seized it and tried to stop and hold Coy until officers could be summoned. He failed to do so, though he fired at Coy and was fired at by Coy, who continued his flight. Witness then went to the body of Jackson, but neither found nor saw a pistol on, about or near his person. Quite a large crowd of people were at and near the place of the killing.

—— Bolds testified, for the State, that he saw the shooting of Jackson by Coy. He was on his horse, about thirty feet distant from the parties when the shooting occurred. He saw the parties scuffling and struggling with each other. Coy had a pistol in his hand and finally shot and killed Jackson. Jackson had no pistol or other weapon in his hand that witness saw, and witness was satisfied that if he had had a pistol in his hand, he, witness, would have seen it. Witness observed the parties closely, because his position with reference to them was a precarious one.

R. W. Hubbard, testified, for the State, that he met the defendant in Floresville, on the day after the killing of Jackson by Coy, and asked him about the particulars of the killing. Among other things, defendant said that Jackson had no arms when Coy killed him.

The State closed.

Tomas Lopez testified, for the defense, that he was present at the race track and saw the killing of Jackson by Coy. The row came up about a bet. Witness saw Coy at the time he shot Jackson. Cordway had hold of Coy's pistol when the fatal shot was fired by Coy. Jackson, at the same time, had a pistol, eight or ten inches long in his hand. When Jackson fell, after he was shot, the pistol fell from his hands into the weeds overgrowing the ground. Quite a number of persons were near Coy and Jackson when the fatal shot was fired. The witness was absolutely positive that Jackson had a pistol in his hand at the time he was shot and killed. Witness was not summoned to appear, nor did he appear before the inquest upon Jackson's body. Witness was the Lopez mentioned by the witness for the State, and was interested in the horse race.

Julio Garcia testified, for the defense, that he was on the race track when Jackson was killed by Coy. He passed near Coy and Jackson while they were quarreling, and he thought, though he could not swear, that he saw both Coy and Jackson throw back their hands to draw pistols. He saw a pistol in Coy's hand, but did not see any in Jackson's hand. On cross examination the witness said that he saw both Coy and Jackson have hold of Coy's pistol, but he saw no other pistol.

Quite a number of witnesses for the defense testified that they were familiar with the reputation for truth and veracity of the defendant Cordway, and that of the State's witness Toodles, and that the reputation of Cordway was good, while that of Toodles was infamous.

The matter referred to in the fifth head note of this report is set out in the bill of exceptions as follows: * * * "the district attorney, in his closing argument to the jury said: 'One of the defendant's attorneys has said that the evidence of the State is not sufficient to warrant the jury in convicting the defendant, and that, if the jury does convict the defendant, the Court of Appeals will set the conviction aside. I say that the State of Texas has no remedy if you acquit the defendant, and I ask you to convict the defendant and give the Court of Appeals a chance to reverse the case.'"

The motion for continuance set out that defendant expected to prove by the absent witnesses, Sandoval and Juan Cordway, Jr., that they were present and saw the shooting of Jackson by Coy, and that Jackson had a pistol in his hands at the time he was shot and killed by Coy.

*Fly & Davidson,* for the appellant: A person extradited upon one charge can not be tried upon another and different charge. (Blandford v. The State, 10 Texas Ct. App., 627; The United States v. Ranscher, 9 Crim. L. Mag., 178; Ex Parte Hibbs, 7 Crim. L. Mag., 690; The United States v. Watts, 14 Fed. Rep., 130; Commonwealth v. Hawes, 13 Bush, Ky., 397; The State v. Vanderpool, 39 Ohio St., 273; In re Cannon, Michigan Supreme Court, 3 Crim. L. Mag., 229. See also 6 Crim. L. Mag., 574, note and authorities cited.)

Then the judgment of the court was correct. The court had not jurisdiction to try the cause, and hence the trial of the cause at a former term was *coram non judice.* The oath administered to appellant, was not, under the circumstances, required by law, but in violation of law. The officer administering the oath was not duly authorized to administer the same in the cause in which it was taken, but was forbidden to do so. By reference to authorities above cited, and to Vattel's Laws of Nations, page 109, note, the following principles will be found enunciated as underlying our proposition:

1. No government is under obligation to return to another government for punishment a fugitive in its jurisdiction, except by force of treaty stipulations.

2. Treaties with the United States Government are the law of the land by which all the courts of the country are bound; and good faith demands that the treaty stipulations be strictly observed and recognized.

3. The treaty with Mexico, by which Coy was extradited, demands that upon application for his apprehension, facts must be submitted to the government *a quo,* sufficient, at least, to make out a probable ground for the accusation against the fugitive. The application for the apprehension of Coy was accompanied by evidence of guilt of the charge of murdering Elder, but not of murdering Jackson; hence, Coy was in Texas to be tried for the murder of Elder; for all other purposes he was in Mexico. He was not before the court. Not being before the court, he could not be tried. Had he been convicted, he would still have been released on habeas corpus. The court had no jurisdiction, and the whole proceeding was a nullity, and the oath charged to have been administered to appellant, being a part of this proceeding, was a nullity; and being a nullity, it can not be the basis of a prosecution for perjury.

The fact of Coy going into trial will not affect the question,

It is true it was a personal right he could set up at any time; but his failure to set it up could not confer upon the court jurisdiction in violation of the treaty stipulations between the United States and Mexico. The construction of the treaty stipulations as given by the courts (see foregoing authorities), absolutely deprives the courts of jurisdiction in such cases. The action of an individual can not abrogate the binding force of a treaty between sovereign powers.

But, was appellant compelled to plead this fact on the trial? Could he raise it after conviction? The error was fundamental, and can be raised at any time. A conviction by a court without jurisdiction is a nullity, and must be set aside. It is a void judgment, which should have been set aside on the motion in arrest of judgment. Appellant could not raise the question on the trial, for the reason he had not the extradition papers, and could not have known their purport. Coy did not make known his defense until after appellant was convicted. Appellant immediately raised the question in his own case. He could not raise it sooner. He did not sooner learn that the court had no jurisdiction.

The judgment in this cause should have been set aside for insufficiency of testimony to warrant the conviction. The indictment charged that the court before which the oath was administered had jurisdiction to try the cause. The facts set up in the motions for a new trial, and in arrest of judgment, show that the court had not jurisdiction; and hence the judgment was void.

*B. F. Bullard* and *T. W. Hankinson*, also for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State: The last proposition of the appellant raises a question which, if correct, goes to the basis of the case. The record is not as clear as it might be in presenting the question, but the State will assume that it is as strongly stated as possible to be stated under the facts.

Juan Coy had been extradited from Mexico for a murder committed in Karnes county. He was placed on his trial in Wilson county, for a murder committed in Wilson county, and for which he was not extradited. It is also made to appear that the murder in Wilson county was committed before the extradition, and that, after extradition, Coy was indicted in Wilson county for the murder committed there, and was placed upon his trial in

December, 1886. This resulted in a mistrial. During said trial appellant was sworn and testified as a witness for Coy, and on the testimony given by appellant during said trial perjury is assigned against him. Coy has since been released on the said murder case through the writ of habeas corpus, he claiming his exemption because not extradited for that offense.

Appellant asserts that, because Coy had not been extradited for the murder in Wilson county, that he (Coy) could not be tried, and the trial he had to undergo was not, therefore, in a court having the jurisdiction to try him. This being so, he further claims that the whole trial was a nullity, and that every action and step taken by the district court of said county was a nullity, and that he (appellant) could not be tried for the perjury committed on the said trial. He claims that the oath he took was and is a nullity, and that, so far as Coy's case was concerned, said district court was not a court of competent jurisdiction to try him, and that the clerk could not legally administer the oath to him, on which he is charged with the crime. This same court heard and tried the habeas corpus case of Coy. The theory of appellant is, that for all purposes except the trial of the murder case for which he (Coy) is extradited, he is in Mexico, and the State courts have no jurisdiction of the person at all. This is a pretty theory, but is poetical, not practical.

If that position be correct, how can appellant answer the fact that Coy was released by the very court that he says had no jurisdiction of Coy's person? The appellant now asserts as part of his case—and a very extensive portion of it, too—that the district court of Wilson county exercised jurisdiction over Coy's person and actually released him from custody. Suppose appellant had committed perjury on that trial of habeas corpus, would his plea of non-jurisdiction have been good then? This asylum theory must be looked to practically. Appellant contends that the trial proceedings in 1886 were a nullity, and, being a nullity, that he could not commit perjury on the trial. This is not law, and the view is incorrect.

1. To this position it may be answered that it was not a nullity. 2. That, under the obligations of the treaty between the United States and Mexico, a personal right attached to the person of Coy which he could plead in suspension of a prosecution for any offense for which he was not extradited under and by virtue of that treaty. 3. That the treaty between Mexico and the United States is a part of the supreme law of the land. 4. That, in

order to take advantage of any right guaranteed to the citizen, save a jury trial in a felony case, he must assert it—or rather that a party, citizen of this nation, can waive any right he has, save and except a trial by jury in a felony case. 5. That, in order to secure immunity from a trial for some offense on which he was not extradited, the extradited party must assert his rights. 6. That the judges of every State of this Union shall be bound by the treaties entered into by the United States. 7. That these courts can not be bound by these treaties unless they have jurisdiction of the person and the subject matter. 8. That the district courts of Texas have jurisdiction of such cases and can not avoid it. (Blandford v. The State, 10 Texas Ct. App., 627; Foster v. Neilson, 2 Pet. (U. S.), 253; Com. v. Hawes, 13 Bush. (Ky.) 700; United States v. Watts, 14 Fed. Rep., 130; State v. Vanderpool, 5 Crim. Law Mag., 50–56; United States Constitution, art. 6, sec. 2.)

The Ohio Supreme Court said: "If it be conceded that the United States asserted the right to retain an extradited prisoner and try him for another crime, then that claim is not conclusive upon the courts. If, as we hold, the question is one of personal right under the treaty, as well as of an international kind, it follows that the courts can hear and determine such a right when it is invaded." (The State v. Vanderpool, 5 Crim. Law Mag., 56, and authorities there cited.)

If the Vanderpool case is correct, then it is a personal privilege, and can be set up by the extradited party in avoidance of his trial on a charge for which he is or was not extradited. If it is a personal right, then it can be waived, unless the waiver is expressly prohibited. Where he sets up this right, the courts must notice it. (Authorities ante.) He can not set up the right unless those rights are invaded. Being placed upon his trial, his rights might be invaded, and then he can assert the rights. But suppose he does not, then what? He is either acquitted or convicted ultimately. The jurisdiction is there, and attaches while these matters are going on. That he could waive this right is, we think, settled from the authorities cited. That it is a personal right, too, is also settled.

It is not necessary here to go into the rights of Mexico in the trial of Coy, or their bearing on the question. That question is much mooted, the authorities are both ways, and investigation here will be of no practical good. Suffice it to say that any right Mexico may have is of a persuasive nature and based upon the

good faith of the United States as a high contracting party to the treaty. The command or authority of a foreign nation can not obtain in this land as authority. To admit authority of a foreign government in our country would be but to admit her power over our land and her citizens, which can not be done. This question was fought out in 1812 on the impressment question. Not only so, but it is inherent in every government, and independence is the basis of free government. Good faith demands of us to regard our treaties and give a strict adherence to them, but we determine that for ourselves in our sovereign capacity. Mexico can complain of a violation of good faith; but if her complaints are unheeded, she can not enforce the provisions of the treaty. She might declare war, or she might sever friendly relations with us, but that is all there is of it.

Again, suppose Coy had been acquitted, and he had been reindicted, or suppose the right of former conviction, acquittal or jeopardy had accrued to him under the case he was tried on, or on any other case, without reference to Mexico, the treaty or extradition, and he was placed on his trial again, would anybody contend for a moment that he could avail himself of his privilege or right of jeopardy unless he pleaded it? Of course not. Yet the Bill of Rights, the Constitutions and laws say a party can not be twice tried for the same offense. If he had been acquitted, and the Bill of Rights says he must not and can not be put on his trial again, could it not be said with as much propriety in that case as in this that the court has no jurisdiction? Certainly.

A treaty is not higher than our Constitutions and Bills of Rights. Treaties can not reach beyond the United States Constitution, and give foreign powers privileges not enjoyed by us, or rights not accorded under such guarantees as our Constitution throws about our citizens. Our courts will not of their own motion, interpose pleas for parties. These things must be pleaded.

Again: Whatever view may be taken of this matter as between Mexico and the United States and Coy as to Coy's rights under existing treaties, how can appellant set them up to defeat his case of perjury? He had no interest in that matter, or those matters. He can not plead it. He can not avoid punishment by setting up that there were some outstanding equities and unsettled rights of Coy of an international nature, or that Coy having settled his international matters, that would relieve him, appel-

lant, of his responsibility to Texas for her demands on his time and patience for perjury. Appellant went into this fight freely, and must abide the consequences of his act and testimony.

Another feature of this case may thus be presented. Suppose Coy had been acquitted in the Wilson county case,. and returned to Mexico, his asylum, and the United States authorities had extradited him on that case, and again placed him on his trial for the murder, and he should plead former jeopardy or former acquittal, what would the State then reply? Could the State avoid the plea? Of course not. The State might reply that the district court of Wilson county had no jurisdiction of the case. and that any judgment it might render would be void. Would this be well suggested? Of course not. No informality could stand in the way of the former trial and acquittal. (Bill of Rights, sec. 14; Code Crim. Proc., art. 9, sec. 545, subdiv. 2; Ex Parte Rogers, 10 Texas Ct. App., 655; Hirshfield v. The State, 11 Texas Ct. App., 207; Powell v. The State, 17 Texas Ct. App., 345.)

Then, if this be true, and the trial of Coy in December, 1886, had resulted in an acquittal of him, it can not be doubted that that acquittal could be pleaded in bar of another prosecution for that offense. It was a personal right which he could waive and did waive. If this be true, then, if appellant's testimony was material in securing the acquittal, or contributed to it, and it was false, then perjury could be maintained.

WILLSON, JUDGE. I. All the witnesses named in the application for continuance, except two, were present and testified on the trial. As to the two absent witnesses, the application fails to show sufficient diligence to obtain their testimony. There was, therefore, no error in refusing to grant the application.

II. Defendant's testimony taken before the jury of inquest, and also his statements made to the witness Hubbard, were admissible, as tending to show the falsity of the statements upon which the perjury is assigned. They were circumstances pertinent to the issue on trial, and throwing light upon it, and in our opinion were strongly corroborative of other testimony of the State. As to the parol testimony of the defendant's statements made before the jury of inquest, it did not contradict or vary said statements as reduced to writing and signed and sworn to by the defendant, and could not possibly have injured the defendant.

III.    It was not error to reject the proposed testimony of the witness McMullen, as to other statements made by the defendant. We know of no rule of evidence under which such statements would be admissible in behalf of the defendant.

IV.    There is no fundamental error in the charge of the court, and if it be erroneous in any respect, the error is not of a character that could be regarded as injurious to the defendant's rights. There was a general exception made to the charge of the court, no error therein being specifically pointed out, and such exception can not be considered. (Williams v. The State, 22 Texas Ct. App., 497.

V.    A bill of exception was reserved by the defendant to certain remarks made by the district attorney in his closing address to the jury. The remarks complained of were in response to an argument used by the defendant's counsel, and were, we think, justified thereby.

VI.    A question of importance, and not before directly adjudicated in this State, or in any other State that we are aware of, is presented in defendant's motion for new trial, and in his motion in arrest of judgment. The facts upon which this question arises are briefly stated as follows: The perjury for which the defendant stands convicted was committed on a trial of the case of the State v. Juan Coy, charged with the murder of one Jackson. After killing Jackson, Coy killed one Elder, in Karnes county, and fled into Mexico. He was extradited from Mexico for the murder of Elder, but not for the murder of Jackson. After being extradited for the Elder murder, he was indicted for the Jackson murder, and put upon trial therefor, and upon said trial the alleged perjury by the defendant was committed. Said trial resulted in a mistrial. Coy did not interpose, upon said trial, any plea or objection to the jurisdiction of the court, but some time thereafter he sued out the writ of habeas corpus, based upon the ground that he had not been extradited for the murder of Jackson, and was therefore illegally restrained of his liberty upon said charge. Upon the hearing of said writ, it was adjudged that the district court of Wilson county had no jurisdiction to try him for the murder of Jackson, and he was discharged from restraint under that charge.

It is claimed by defendant, upon this state of facts, that, as the district court of Wilson county had no jurisdiction to try Coy for the murder of Jackson, the defendant could not commit legal perjury on that trial. In an able and exhaustive brief by

the Assistant Attorney General, this proposition is, we think, successfully and conclusively answered. We shall not enter upon an extended discussion of the question, but merely state our conclusions upon it, which, we think, are well supported by both reason and authority. Our conclusions are:

1. The district court of Wilson county had jurisdiction of the subject matter of prosecution against Coy; that is, the offense of murder.

2. It did not have jurisdiction over his person to try him for said murder, because he had not been extradited for that particular murder.

3. Jurisdiction over the person, unlike jurisdiction over the subject matter, is a matter with respect to which only the person over whom the jurisdiction is being or sought to be exercised has or can have any concern. It can be denied or objected to by no one else. It may be waived by him, as he may waive any other right except that of trial by jury in a felony case.

4. If such person submits to the jurisdiction of the court over his person; if he makes no objection to being tried by the court, he waives his privilege, whatsoever it may be, and so long as he does not assert such privilege and challenge such jurisdiction, the court may proceed legally to try him, and in such case the proceedings had against him are not void, but in any event are merely voidable, and voidable only at the instance of the person entitled to the privilege, and can not be called in question by any other person.

We hold, therefore, that the trial of Coy for the murder of Jackson, upon which trial the alleged perjury was committed, was a legal and not a void proceeding, and that the court in which said trial was had was a court of competent jurisdiction for all the purposes of this case.

With respect to the sufficiency of the evidence to sustain the conviction, we are not prepared to say that it does not fill the full measure of the law, though there is some conflict in it, and in some respects it is not as clear and satisfactory as it should and perhaps could have been made. The credibility of the witnesses was a matter exclusively for the jury to determine, and the jury having believed the testimony of the State's witnesses, the guilt of the defendant can not be questioned.

The judgment is affirmed.

*Affirmed.*

[This opinion was delivered at the Galveston branch of the court, March 7, 1888. The appellant's motion for rehearing, which was subsequently filed, was taken under advisement and transferred to the Austin branch, where it was decided by the opinion which follows.—Reporters.]

### OPINION ON MOTION FOR REHEARING.

WILLSON, JUDGE. A re-argument of this case upon the motion for rehearing and a thorough consideration of the grounds of the motion have convinced us that the conviction should be set aside. As stated in the opinion of affirmance, the application for a continuance was not improperly refused, for the reason that it failed to show legal diligence to obtain the testimony of two absent witnesses, Cordway, Jr., and Sandoval. But the question with respect to the testimony of these absent witnesses was again presented for the consideration of the trial court on the defendant's motion for a new trial, and upon this second presentation of the matter it was the duty of the court to grant a new trial, if, in view of the evidence which had been adduced on the trial, it appeared that the absent testimony was material and probably true, notwithstanding a failure to show strict legal diligence to obtain said absent testimony on the trial. (McAdams v. The State, 24 Texas Ct. App., 86; Jackson v. The State, 23 Texas Ct. App., 183; Covey v. The State, Id., 388.)

The evidence adduced upon the trial upon the issue of the falsity of the defendant's statements, as alleged in the indictment, is not only conflicting, but the only positive evidence on the part of the State to establish such falsity was that given by the witness Monroe Toodles, whose general reputation for truth and veracity was proved to be bad by several witnesses. By the testimony of two absent witnesses, the defendant stated he could prove the truth of the alleged false statements; that is, that the deceased Jackson, at the time he was shot and killed by Coy, did have a pistol in his hand. In view of the evidence adduced on the trial, and especially of the bad character of the witness Toodles, this absent testimony was certainly material, and was probably true. We are convinced that, because the defendant was deprived of the absent testimony, injustice has probably been done him, and that upon this ground he should have been granted a new trial. We will therefore grant the

motion for rehearing, set aside the conviction and remand the cause for another trial.

With respect to the other grounds of the motion for rehearing, all of which are discussed and determined in the opinion of affirmance, we are still of opinion that our conclusions as stated in that opinion are correct.

*Rehearing granted, and cause reversed and remanded.*