## FRANK BUCK V. TERRITORY.

No. 2171, Okla. T.   Opinion Filed January 11, 1909.

(98 Pac. 1017.)

1.   **TRIAL—Arguments of Counsel—Objection.** (a)   When the prosecuting attorney goes out of the record and makes improper remarks, calculated to prejudice the rights of the defendant, it is the duty of counsel for the defense to promptly interpose an objection to such remarks, and move the court to withdraw them from the consideration of the jury, and to instruct the jury not to consider such remarks.
(b)   It is too late to interpose objections to improper remarks of the prosecuting attorney in his argument to the jury, after the argument has closed, unless the remarks were of such a character that their withdrawal from the consideration of the jury would not cure the error committed in their utterance.
(c)   If counsel for the defense go out of the record and make remarks not authorized by the evidence, they cannot be heard to complain if counsel for the prosecution are permitted to go outside the record in replying to such statements.
(d)   When it is claimed that counsel for the prosecution went out of the record, and made improper remarks, calculated to prejudice the defendant, and the trial judge certifies in the record that such remarks were made in reply to remarks not authorized by the evidence made by counsel for the defense, such certificate is permissible; and, in the absence of any showing in the record to the contrary, the appellate court is bound by such certificate of the trial judge.

2.   **LARCENY—Evidence.** See case for statement of evidence, which not only sufficiently corroborates the testimony of an accomplice, but which establishes the guilt of the defendant independently of the testimony of the accomplice.

3.   **TRIAL—Exceptions to Instructions.** (a)   See opinion for objections of the court to the practice of· taking exceptions to each and all of the instructions given to the jury, which practice, while permissible under section 5518, Wilson's Rev. & Ann. St. 1903, is not to be commended.
(b)   See instruction on alibi, which, while not indorsed as a model, is held sufficient under the facts in this case.
(c)   The laws of Oklahoma are to be liberally construed in the furtherance of justice, and a conviction will not be reversed upon a technicality which does not affect the substantial rights of the defendant.

(Syllabus by the Court.)

*Appeal from District Court, Woods County; J. L. Pancoast, Judge.*

Frank Buck was convicted of larceny, and appeals.   Affirmed.

On the 5th day of December, 1906, Frank·Buck (hereinafter

called defendant) was found guilty in the district court of Woods county, Okla., upon an indictment wherein defendant was charged with the larceny of domestic animals, and was sentenced by the court to six years' imprisonment in the territorial prison. Defendant filed a motion for a new trial, which was overruled by the court; to which defendant duly excepted. An appeal was taken to the Supreme Court of Oklahoma Territory. Upon the admission of the state of Oklahoma into the Union, under the provisions of the Constitution of the state and the Enabling Act, this case was transferred to the Supreme Court of the state. When the Criminal Court of Appeals of Oklahoma was established as directed by law, the case was transferred to this court by the Supreme Court of the state of Oklahoma.

*Wm. Briggs,* for appellant.—.

On question of misconduct of attorney in argument: Abbott's Trial Brief, 605; *People v. Quick,* 58 Mich. 321, 23 N. W. 302; *Martin v. State,* 63 Miss. 505, 56 Am. Rep. 812; *Hardke v. State,* 67 Wis. 552, 30 N. W. 726; *Hamilton v. State,* 97 Tenn. 452, 37 S. W. 194; *People v. Dane,* 59 Mich. 550, 26 N. W. 781; *State v. Smith,* 75 N. C. 306; *People v. Mitchell,* 62 Cal. 411; *Cross v. State,* 68 Ala. 476; *Furguson v. State,* 49 Ind. 33; *Greene v. State,* 17 Tex. App. 395; *Martin v. State,* 63 Miss. 505; *People v. Kramer,* 117 Cal. 647, 49 Pac. 842.

On question of proper instruction on alibi: *Shoemaker v. Territory,* 4 Okla. 118; *French v. State,* 12 Ind. 670; *State of Iowa v. Reed,* 17 N. W. 150.

*W. C. Reeves,* Asst. Atty. Gen., and *Charles Swindall,* for the Territory.—

On question of improper remarks of prosecuting attorney: *People v. Shears* (Cal.) 65 Pac. 295; *State v. O'Keefe* (Nev.) 43 Pac. 915; *State v. Regan* (Wash.) 36 Pac. 472; *Commonwealth v. Tripp* (Mass.) 32 N. E. 905.

On the question of proper instruction on alibi: 12 Cyc. 619; *People v. Winters,* 57 Pac. 1067.

FURMAN, PRESIDING JUDGE (after stating the facts as

above). First. One ground relied upon by the defendant to secure a reversal of the conviction in this case is the allegation that he was prejudiced by improper remarks made by the county attorney in his closing argument to the jury. It is the privilege and duty of counsel for the defense whenever the prosecuting attorney goes out of the record and makes improper remarks calculated to prejudice the defendant, to promptly interpose an objection thereto and move the court to exclude the remarks so made and instruct the jury that they are improper and must not be considered by them. It is not good practice for counsel for the defense to sit silently by and make no objections to supposed improper remarks of the prosecuting attorney until after the argument is concluded, as was done in this case. As a general rule, it is then too late to present such matters to the trial court. Good faith and fairness to opposing counsel and the trial court require that objections should be presented in time to prevent, if possible, the commission of error at any stage of a trial. Cases may, however, arise in which the remarks complained of are of such a flagrant character that their withdrawal from the jury would not cure the error committed in their utterance. In such cases the objection may be made after the argument is concluded, but the safe and fair practice is always to check improper argument at the earliest possible moment; otherwise there is danger of waiving any rights which may arise therefrom.

When this matter was presented to the trial judge, after the conclusion of the argument, he appended to the motion of the defendant this statement:

"All of said statements, however, were made by the county attorney in the way of argument. and were made in answer to statements upon the same subject made by counsel for the defendant."

In the absence of any showing to the contrary, we must accept this statement of the trial court. If counsel for the defense go out of the record and make statements not supported by the evidence, they cannot be heard to complain if counsel for the prosecution is permitted to reply to such statements. We, there-

fore, hold upon the record as presented that no error was committed in this matter of which defendant has just cause to complain.

We are sustained in these views by the following authorities:

"Remarks of the prosecuting attorney which ordinarily would be improper are not grounds for exceptions if they are provoked by the defendant's counsel, and are in reply to his statements." (12 Cyc. p. 582.)

We could cite authorities without limit to the same effect, but the principle announced is so just that we deem further citation of authority unnecessary. The Supreme Court of California, in the case of *People v. Shears,* 133 Cal. 154, 65 Pac. 295, uses this language:

"A new trial should not be granted for improper remarks of the district attorney, where defendant merely excepted to the statement, since its effect would have been removed if defendant had asked the court to instruct the jury to disregard it."

The Supreme Court of Nevada, in the case of *State v. O'Keefe,* 23 Nev. 127, 43 Pac. 918, 62 Am. St. Rep. 768, says:

"Argument of the prosecuting attorney that defendant's failure to call as witnesses his alleged accomplices was evidence of his guilt is not ground for reversal, where defendant failed to request the court to instruct the jury to disregard such argument, though at the time objected thereto, and excepted to denial of his motion to strike out the same."

In the case of *State v. Regan,* 8 Wash. 506, 36 Pac. 472, the Supreme Court of Washington uses this language:

"Statements of the prosecuting counsel unwarranted by the evidence are no ground for error unless the defense has first moved the court to strike them out, or tell the jury to disregard them."

See, also, *Commonwealth v. Tripp,* 157 Mass. 514, 32 N. E. 905; 12 Cyc. 584, 585.

Second. The defendant challenges the sufficiency of the evidence to sustain the verdict of the jury. The evidence in substance is as follows:

J. G. Bitner testified that he was the owner of the cattle de-

scribed in the indictment, and that they were in the pasture of Sam Press in September, 1905, that he had never given the defendant or Ray King his consent to take said cattle, and that he had never sold said cattle to Ray King or the defendant.

Ray King, an accomplice, testified that this defendant and witness went to the pasture of Sam Press and stole the cattle of Bitner, described in the indictment. Defendant said they would drive the cattle off and sell them. Witness and defendant drove the cattle about five miles away, and placed them in Archer's pasture, and left them there. That witness never saw the cattle again until they were brought back by the Press boys to the place from which they had been stolen.

Samuel Press testified that the five head of cattle described in the indictment belonged to J. G. Bitner, and were in a pasture controlled by his brother, George, and himself, in Woodward county, Okla. T., and were taken from said pasture about the 15th day of September, 1905; that witness saw defendant riding a brown horse, about 2 o'clock on the afternoon of September 14, 1905; that defendant was riding right along the line between the place of witness and King; that defendant was not on a road, but was in a horse pasture. Witness saw the cattle that were stolen on Friday morning, and missed them on Sunday morning. Witness hunted for the missing cattle, and found one of them on Wednesday, and another on Thursday, in Archer s pasture. Witness found the other two stolen cattle on the 12th day of November, in what is called the Texas pasture. When witness saw defendant on the 14th day of September, defendant was just outside the fence of the pasture of witness. He was riding a brown horse, and had on a light hat, a light shirt, light pants, and red boots. "The cattle of Bitner were taken from our pasture without my knowledge and consent."

George Press testified: On or about the evening of the 16th of September, 1905, a little before sundown, witness saw defendant in the pasture of witness and his brother down near a creek. Ray King was with defendant. They were riding north. Defendant and King were about half a mile from the house of witness.

On the morning of the 14th of September, 1905, witness saw defendant. He was riding a horse belonging to Ray King. Defendant asked witness where Mr. King lived, and upon being told, rode off in that direction. Testified substantially as the witness Samuel Press had done as to the cattle of Bitner being missed from the pasture, and the search made for them, and their recovery. Also that there were four or five fences and gates between the pasture from which the cattle were missed and where they were found, and that the fence around the pasture from which the cattle were missed was in good repair.

Jennie Pimlot testified: Saw defendant at the house of the home of the father of Ray King about sundown on the 15th day of September, 1905. "When I first saw him he was coming out of a little creek that runs west of King's house. Defendant and Ray King came to the house together."

John F. Nicholson testified: Knows defendant and Ray King. On the 15th day of September, 1905, they came west from George Press's home about three-quarters of a mile. They had a rope on a steer belonging to Bitner. "When I next saw this steer he was in Archer's pasture." Does not know whether defendant and King saw witness.

A number of other witnesses testified for the prosecution, but it is not deemed necessary to incumber the record with a statement of their evidence. Defendant set up the defense of an alibi. It was supported by the testimony of five witnesses besides the defendant. The jury saw all of these witnesses and heard their testimony. They accepted the testimony of the prosecution, and rejected the testimony of the defendant. We think that the testimony for the prosecution is amply sufficient to sustain the verdict.

Third. After the instructions of the court had been read to the jury, the record contains the following statement:

"The defendant excepts to each and every instruction given by the court, and to the refusal of the court to give the instructions offered on behalf of the defendant."

In the case af *Rhea v. United States,* 6 Okla. 258, 50 Pac. 992, the following exceptions were held good:'

"To the giving of each and every and all of said instructions to the jury by the court the defendant excepted separately at the time, and still excepts."

The Supreme Court of Oklahoma Territory based this ruling upon a number of Kansas cases, but said: "The method pursued is not to be commended." We fully agree with this statement. We think that this practice is to be condemned. We regard it as unfair to the trial judge, and unjust to the state. In one paragraph of an instruction, as a mere matter of inadvertence, an error may have been made which, if specifically called to the attention of the court, would have been corrected; but, under the practice approved, but not commended, a defendant by stating that he "excepts to each and every and all of the instructions given by the court separately" can cover up his real exception, and if the hazard of the legal battle turns against him, he can in the appellate court abandon his other exceptions, and rely alone upon the inadvertent error, and thus defeat the ends of justice and secure a reversal at great expense to the state, when, if he had presented his real objection openly and fairly, and in good faith, the trial court would have corrected the error before harm was done. This practice enables designing lawyers to dig pitfalls and lay ambuscades for the trial court. No end of justice is promoted by this rule. It cannot serve a single fair purpose in the trial of a case, and results in evil and injury, rather than in fair play and justice. The purpose of an exception is two fold. It should notify the trial court of the specific objection relied upon. The presumption of law is that no judge commits willful error. If his attention is called to the specific objection, the presumption of law is that he will correct any error that may be pointed out. If the court fails to make the correction, then the exception preserves the matter alleged to be error, for review in this court. Unless the trial court is put upon notice of the specific point relied upon as error, and if such point can be pointed out for the first time in this court, then this is a court

of original jurisdiction, when, as a matter of fact, as to such matters, this court has appellate jurisdiction only.

The competent and careful lawyer investigates the legal questions involved in his cases before he tries them, and should be able to detect and except to errors in the instructions given at the time. Any fair, judge should, and doubtless would, give reasonable time in which counsel can look over and note exceptions given before they are read to the jury. A refusal to do this would render the trial unfair, which would be in violation of the Constitution, which guarantees to every defendant a fair trial, and would be ground for reversal, if it appeared that any portion of the instructions given were prejudicial to the defendant. It may be urged that the practice saves time. It may save a little time during each trial, but it may result in the loss of much more time, and in great expense to the state, and in the defeat of justice, by requiring the reversal of cases on account of the errors which would have been cured if the attention of the trial court had been specifically called to them in apt time. Lawyers should present questions fairly and fully in the trial court. They should do this as an act of justice to themselves, opposing counsel, the trial judge, and the state of Oklahoma. To say that an exception is taken to each, and all, and every paragraph, in instructions given to a jury separately, amounts only to a general exception, unless shadow is of more value than reality. Such exceptions do not carry the stamp of good faith upon their face. It is not believed that such exceptions are taken because counsel honestly believed that there was error in each paragraph in an instruction to a jury. It is an ambush, a subterfuge, a mockery, a snare, and a delusion. We are discussing the principle involved in this practice, and are showing its rank injustice. No personal reflections are intended to be cast upon counsel We are simply pointing out the abuses which will creep into our system of criminal jurisprudence if this practice is allowed to be continued.

We think that the correct rule is laid down in *Peace v. State,* 27 Tex. App. 03, 10 S. W. 762. Judge White there said:

"A general rule well established is that 'a bill of exceptions taken generally to the charge of the court, specifying no particular error or errors, has no standing, and will not be considered by this court. In the absence of a proper bill of exceptions this court will examine the charge of the trial court only with regard to fundamental errors, or such as under all the circumstances of the case were calculated to injure the rights of the accused.' *Smith v. State,* 22 Tex. App. 316, 3 S. W. 684; *Williams v. State,* 22 Tex. App. 497, 4 S. W. 64; *Cordway v. State,* 25 Tex. App. 405, 8 S. W. 670."

In the case of *Wilson v. People,* 3 Colo. 331, the Supreme Court of that state said:

"A general exception was taken to the instruction *en masse.* We have decided at this term, in the case of *Webber v. Emerson,* 3 Colo. 248, that such an exception, if any distinct part of the charge is sound, will not be considered. This exception comes within the rule there laid down."

The Supreme Court of Massachusetts, in *Commonwealth v. Tolman,* 149 Mass. 236, 21 N. E. 380, 3 L. R. A. 747, 14 Am. St. Rep. 414, says:.

"Under a general exception or objection to a charge, one cannot be allowed to select afterwards particular phrases and found special exceptions thereon. *Curry v. Porter,* 125 Mass. 94; *McMahon v. O'Connor,* 137 Mass. 216; *Wright v. Wright,* 139 Mass. 177, 29 N. E. 380."

In *Commonwealth v. Meserve,* 154 Mass. 75, 27 N. E. 997, the Supreme Court said:

"The judge's attention was not called to any particular defect or insufficiency or inaccuracy in his instructions to the jury, but at the close of the charge the defendants enumerated 20 different portions of the charge to which they excepted, embracing all the four counts which were submitted to the jury, but with no further specification of what they complained of, or wherein they wished for different rulings. Now in such a case, if any fundamental error in principle is discovered, or anything by means of which it seems probable that injustice may have been done, the defendants should have the benefit of it. But under such circumstances it would hardly conduce to a due administration of justice to search out opportunities for making minute verbal criti-

cisms of the language of the charge, or to look for omissions to say all that might properly have been said."

In *People v. Bristol,* 23 Mich. 126, the record shows that the following exception was reserved: "The defendant excepted in due form to the refusals to give the charges requested, and to each and every part of the charge given specifically." The Supreme Court dismissed the matter with this remark: "The exception to the charge is too general."

In *Van Stone v. Bierce Manufacturing Company,* 142 U. S. 128, 12 Sup. Ct. 181, 35 L. Ed. 961, the court says: "A general exception to the charge of the court as a whole cannot be considered."

An exception which challenges each and every paragraph in an instruction should be treated as a general exception to the instructions given, it matters not in what language it may be couched, unless we consider form rather than substance. We could cite pages of authorities in support of our position, but deem it unnecessary to do so. We have expressed our views fully upon this question for the purpose of calling the attention of the bar and the Legislature to what we conceive to be a great evil, which has grown up in our practice on account of section 5518, Wilson's Rev. & Ann. St. 1903, which is as follows:

"(5518) 382. In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict, and if it state the testimony of the case it must in addition inform the jury that they are the exclusive judges of all questions of fact. Either party may present to the court any written charge, and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused the court must indorse or sign its decision. If part of any written charge be given and part refused the court must distinguish, showing by the indorsement or answer what part of each charge was given and what part refused."

This was taken from the statutes of Kansas, and it was upon this statute and the decision rendered thereon by

the Supreme Court of Kansas, that the Supreme Court of Oklahoma Territory rendered the opinion in the case of *Rhea v. United States,* 6 Okla. 258, 50 Pac. 992. We feel bound by the statute, and the decisions above referred to, but at the same time we regard it as our duty to express our condemnation of the rule. It places a premium upon carelessness, and ignorance upon the part of the attorneys, and if permitted to stand will result in great expense to the state, and even to the defeat of justice in many cases, by forcing this court to reverse convictions on account of errors which might have been prevented, and when the defendants are guilty, and which reversals would be avoided but for this statute.

Under the general exceptions reserved in this case counsel for the defense urge in this court specific objections to instruction No. 7, given by the court to the jury, which is as follows:

"No. 7. You are further instructed that one of the defenses interposed in this case by the defendant is what is known in law as an alibi; that is, that the defendant was at another place at the time the crime was committed, if the crime was committed. The defense of alibi, to be entitled to consideration, must be such as to show that at the very time of the commission of the crime charged, if one was committed, the accused was at another place, so far away and under such circumstances that he could not, with ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof. In considering the proof upon the question of alibi you will consider the whole of the evidence, both that given for the defendant and for the territory applying the same rules as are applied to any other evidence, the law being that when the jury have considered all of the evidence, as well that touching the question of alibi as the criminating evidence introduced by the prosecution, then if they have any reasonable doubt of the guilt of the accused of the offense with which he stands charged, then the jury should acquit. Given exception. J. L. Pancoast, Judge.

We do not regard this instruction as a model, and we do not advise trial courts to follow it. It would have been better to have informed the jury in clear and affirmative terms that, if upon the evidence of an alibi they entertained a reasonable doubt as to the presence of the defendant at the time and

place of the commission of the offense charged, they should acquit him. But, in view of the clear and overwhelming nature of the evidence as to the guilt of the defendant we do not think that any injury to his substantial rights has been committed. If the evidence had been less satisfactory upon this question, we would feel constrained to reverse the conviction. It is not, however, every inaccuracy in an instruction in a case that will necessarily result in a reversal. Section 5144, Wilson's Rev. & Ann. St. 1903, declares that the statutes are to be construed "in the furtherance of justice." Section 5618, Wilson's Rev. & Ann. St. 1903 is as follows:

"(5618) 482. On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

We have carefully examined all of the assignments of error in connection with the motion for a new trial in this case, and fail to find any material errors which affect the substantial rights of the defendant. The judgment of the lower court is, therefore, in all things affirmed.

BAKER and DOYLE, JUDGES, concur.