### JEROME CHAMBERS v. STATE.

No. A-4426.    Opinion Filed Oct. 25, 1924.
(229 Pac. 646.)

(Syllabus.)

Trial—New Trial—Right to Fair and Impartial Trial—Court to Rule Without Unfair Comment on Objections and Charge Law of Case—Judge's Comment in Ruling Indicating Belief in Defendant's Guilt Warranting New Trial. The policy of the law is that one accused of crime shall have a fair and impartial trial. The duty of the trial judge is to rule without unfair comment on the objections presented, and to state the law of the case in the charge to the jury. Where in the trial of a case, closely contested on the facts, the trial judge on ruling to objections urged by defendant's counsel, makes certain comments indicating his belief that defendant is guilty, and that the defense interposed is without merit, such action will be deemed prejudicial to the substantial rights of the defendant, and a new trial will be ordered.

Appeal from District Court, Seminole County; John L. Coffman, Judge.

Jerome Chambers was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

See, also, 20 Okla. Cr. 64, 201 Pac. 393.

This is an appeal from a judgment of conviction of the district court of Seminole county, wherein the plaintiff in error (hereinafter referred to as defendant) was jointly charged

with one Will Ollar of the crime of murder alleged to have been committed in said county on the 15th day of September, 1921, by beating one A. J. Horton over the head with a pistol. On a separate trial the defendant Chambers was found guilty of manslaughter in the first degree, and his punishment assessed at imprisonment in the state penitentiary for a period of 10 years. Judgment was pronounced on the 20th day of February, 1922, and the appeal lodged in this court on the 15th day of August, 1922.

Both the defendant and deceased were farmers, and lived not far from the town of Sasakwa in Seminole county. The killing arose over the right of the deceased to use a private roadway and to go through a certain gate that separated the premises of the defendant from certain premises owned by the father of his codefendant. There is considerable dispute in the evidence as to the right of the deceased to pass along this roadway and through this gate. It seems to be undisputed that Ollar had given the defendant permission to erect a gate at the place where this difficulty occurred, and to use the roadway as an exit from his premises. This roadway was built about six months before the difficulty occurred, and it appears that the deceased had also been using it as an exit from his premises, which were located about a half mile southeast of where this defendant lived. Ollar claims, however, that he did not give the deceased permission to use this roadway or to go through this gate as an exit from his premises, and that if the deceased had been using it he had no knowledge of it.

It appears that on the day of the difficulty at about noon the deceased, who was a road overseer, was working on a bridge on a public highway about three-quarters of a mile southwest of where the difficulty occurred; that the defendant came along the road at that place, and that a

dispute arose between the defendant and the deceased as to the use of this particular roadway and gate, and that the defendant told the deceased that Ollar was going to nail the gate up, and that the deceased then said that if he did he would cut it down.

The difficulty which resulted in the death of Horton occurred about 5:30 or 6 o'clock that evening when Horton was returning home from his bridgework. Horton was accompanied by another neighbor by the name of Allen, and went by Allen's house on his way home. Allen's house was located about 300 yards southwest of the gate where the difficulty occurred, and in going from the bridge to the gate the deceased, who was driving a team hitched to an ordinary farm wagon, passed through Allen's premises. However, Allen did not get out, but accompanied the deceased to the scene of the difficulty. Allen admitted that he had heard of the previous dispute between the defendant and the deceased about the use of the gate, and had heard that the deceased was going to cut the gate down if it was nailed up, and admitted that he went along with the deceased to see "that it was well done." Allen testified in substance as follows:

"That he and the deceased drove up in a wagon, and that Will Ollar, a defendant, had the gate nailed up and had piled some brush in front of it; that when they drove up the deceased spoke to the boys and told them that he was on his way home; that defendant began cursing the deceased, telling him that he knew what had been told him, that he (Allen) jumped out of the wagon and tried to pacify the defendant, whereupon Will Ollar told him to shut his damned mouth, that it was not any of his business; that deceased was sitting on the spring seat in the wagon with the lines in his hand; and that after the defendant had continued to abuse the deceased, the deceased told the defendant that if he would take his gun off he would fight him; that defendant immed-

iately made two jumps and jumped into the wagon behind the deceased, jerked out his gun and hit the deceased in the head and knocked him off the seat, and that deceased fell down between the seat and the dashboard; that in so falling the deceased dropped the lines and the team became frightened and started to run; that they ran into a tree and broke the wagon tongue; that the defendant hit the deceased a couple of licks on the head with the pistol while the deceased was down between the seat and the dashboard; that the defendant jumped out of the wagon about the time it struck the tree; and that the deceased got out of the wagon and later took the wagon and team home.

"The deceased's daughter and niece claim to have been near the scene of the homicide and heard loud talking and claim to have arrived on the scene of the homicide in time to see the defendant strike the deceased with the gun.

"Will Ollar, a codefendant, says that when this defendant struck deceased with the gun deceased was stooping to pick up an axe which was lying in the wagon, and that the witness Allen had directed deceased to hit the defendant Chambers with the axe. The testimony of the defendant Chambers is substantially the same as that of Ollar. They both testified that the defendant only hit the deceased once with the pistol, and that the blow did not knock the deceased down, but that the deceased fell when the tongue of the wagon struck the tree and hit his head against the side of the wagon. Allen denied that he directed the deceased to strike the defendant with the axe, and the deceased's daughter and niece testified that they saw no motion on the part of the deceased, indicating that he was attempting to get an axe out of the bottom of the wagon, but the niece of the deceased admitted that she heard the defendant say right after he got out of the wagon that 'Mr. Horton ought not to have done me that way.' "

Pryor & Stokes, for plaintiff in error.

The Attorney General and J. Roy Orr, Asst. Atty. Gen., for the State.

MATSON, P. J. (after stating the facts as above). Numerous errors are assigned covering alleged mistakes in the court's instructions, the refusal to give instructions and numerous acts of misconduct on the part of the trial judge during the progress of the trial. To enter into a lengthy discussion of all these separate assignments of error would prolong this opinion to great length. The record is voluminous and the errors complained of are all supported by argument, and the citation of authority in the brief filed in behalf of this defendant. Suffice it to say that after an examination of the entire record this court is convinced that the defendant did not receive that fair and impartial trial that is guaranteed to him by the Constitution and laws of this state. This conclusion is reached not so much from the prejudice preponderating from any single assignment of error, but rather from a consideration of all these assignments collectively. The trial court throughout the trial indicated by remarks made, and rulings on the admission and rejection of evidence, a clear belief, in the presence of the jury, that the defendant was guilty, and on one occasion when the defendant offered to prove by a witness certain facts, which counsel believed to be competent, the court in ruling made the following comment:

"The court refuses to allow the witness to make the statement as indicated by counsel, for the reason it does not matter whether the defendant had or did not have a right to be there; it did not justify him in making an assault on the deceased because the deceased was not trying or in a position to cause any immediate damage to the property of the defendant, and the question as to who should use the gate was a civil question and should have been settled by the civil courts."

It appears, without dispute, from this evidence that the difficulty arose upon a sudden provocation; that the defend-

ant claimed that he was at the time in the act of defending himself from an attempted assault about then to be made upon him by the deceased with an axe. The comment of the court that the deceased was not in a position to cause any immediate damage to the property of the defendant was, under the circumstances of the evidence in this case, equivalent to saying that the defendant did not have the right or privilege to defend himself or his property against any attack or trespass by the deceased at that time. This statement of itself struck the defense a body blow. It was clearly an adverse comment upon the right of the defendant to defend himself and his property at that time, and it invaded the province of the jury to determine the merit of the defense interposed. That the defendant was at a place where he had a right to be on that occasion is undisputed. We think it clear also that there was no premeditated design or thought on the part of the defendant of taking the deceased's life. The trial court should not have made this comment. Whatever may have been the private opinion of the trial judge concerning the right of the defendant to defend himself and his property on that occasion, should have been left unsaid. Under the evidence in this case, that was the issue that the jury was called upon to decide. It was not solely a question of law, but a mixed question of law and fact, as there was a clear conflict in the evidence, and the law of self-defense entered into the controversy at the time the unfavorable comment was made.

It appears also from the record that it was the claim of the defendant that the deceased drove approximately a mile out of his way in going home from the bridge on this occasion in order to pass through this gate which he had reason to believe would be nailed up. In this connection the defendant offered to prove by certain witnesses that there

was a nearer road just as good that the deceased could have taken in returning home that evening from his work at the bridge had he desired to avoid any difficulty. Two plats were introduced in the evidence, one by the state and one by the defendant. There was considerable dispute as to the correctness of each of these plats, and at the close of the case the defendant requested the court to permit the jury to view the premises. This request was denied. While it is a matter of discretion with the trial court to permit a view of this kind, it appears, under this record in view of the dispute as to the location of these roads and as to whether they were open and fit for travel, that it would have clarified the situation to have permitted the jury to make a view of the premises. We do not undertake to say, however, that this was reversible error. Attention is called to it only for the purpose of indicating the court's attitude throughout the trial. The court also, over objection by defendant's counsel, permitted the state, under the guise of introducing rebuttal evidence, to rehash a large part of the testimony theretofore introduced in chief against the defendant. The evidence thus introduced was not strictly rebuttal, but covered a wide field of investigation covered by the same witnesses in chief, and had the effect of giving undue and unfair emphasis to their testimony.

During the progress of the argument by the county attorney, the record discloses he made the following assertion:

"Now we are not trying anybody for assault and battery. That is tried in the justice of the peace court."

Counsel for defendant objected to the remark, and was met by the following rebuke by the court:

"I think counsel has the right to tell the jury what the defense is. Now gentlemen, I tell you I don't want any interruption in the argument. If counsel gets out of the record, I will stop him myself."

Where a defendant is on trial for his life or liberty it is the duty of counsel representing him to take all steps which he thinks proper and necessary to preserve his rights throughout the progress of the trial, for the purpose of making the proper record for review by the appellate court should a conviction follow.

The duty of the trial judge is to rule fairly and impartially without unfair comment on the objections presented, and to state the law of the case in the charge to the jury. The court should never assume to exercise any prerogative of counsel, nor should counsel undertake to supplant the court's instructions by expounding his personal views as to the law of the case antagonistic to the views of the court as expressed in the general charge.

Under our system of jurisprudence the trial judge is the exclusive judge of the law. Ample opportunity is given to counsel on each side to present their respective views of the law of the case before the jury is instructed. But after the charge is given to the jury that becomes the controlling law of the case, and as such counsel on both sides as well as the jury are bound by it. Counsel may reserve exceptions to the charge as a whole, or to any paragraph or paragraphs thereof for purposes of review, but counsel has not the right nor prerogative to substitute in argument to the jury his personal views of the law in opposition to the views of the court as expressed in the instructions. In this jurisdiction the jury is the exclusive judge of the facts, but is bound by the law as given by the court.

In the instant case the court had instructed on the law of assault and battery as being included within the crime charged. There was some evidence on the part of the defendant that the blow given by defendant to deceased was not a contributing cause of death; if the jury determined

that it was not, the defendant under the court's instructions could have been convicted of simple assault and battery.

For the county attorney to state to the jury in argument that "we are not trying anybody for assault and battery. That is tried in the justice of the peace court," was a statement of law directly opposed to the court's charge, and was properly objected to.

Be that as it may, counsel for the defendant certainly had a right to, in a respectful and orderly manner, make his objection to such argument and preserve his record for review by this court, without any rebuke by the trial judge for having so done.

This court has held that objections to the argument must be made at the time the objectionable matter is stated, that it is too late to make such objections after the argument is closed. Buck v. Terr., 1 Okla. Cr. 517, 98 Pac. 1017.

Such holding presupposes necessarily an interruption of the argument for that purpose. It was immaterial that the trial judge did "not want any interruption in the argument." It was immaterial that the trial judge declared he would stop counsel, "if he gets out of the record." The defendant and counsel representing him had certain rights given to him by the statutes of this state and the decisions of this court construing the same, and trial judges in ruling on objections either to evidence or argument should avoid the utterance of any remark that indicates a leaning on his part one way or the other in the trial of a criminal cause.

Throughout this record the rulings and remarks of the trial judge were such as to clearly indicate to the jury his belief in the guilt of the defendant. The case was closely contested on the facts. We cannot say that the errors complained of did not work to the substantial prejudice of this

defendant under such circumstances. We opine that to a considerable extent they contributed to his conviction. The judgment is reversed, and cause remanded to the trial court for new trial.

BESSEY and DOYLE, JJ., concur.